UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

BAE Systems Information
and Electronics Systems
Integration Inc.

    v.                                              Case No. 10-cv-370-LM

SpaceKey Components, Inc.

**O R D E R**

BAE Systems Information and Electronics Systems Integration Inc. ("BAE") has sued SpaceKey Components, Inc. ("SpaceKey") in six counts, seeking damages and declaratory relief.  BAE's claims arise from SpaceKey's alleged failure to pay for certain products BAE delivered to SpaceKey, and from BAE's attempt to terminate the business relationship between the two companies.  SpaceKey, in turn, has asserted five counterclaims.  One of those, Count Five, is a claim that BAE violated the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. ("RSA") § 358-A.  Before the court is BAE's motion to dismiss SpaceKey's CPA claim and to dismiss any claim for damages based on injuries to third parties.  SpaceKey objects.  For the reasons that follow, BAE's motion to dismiss is granted in part.

**The Legal Standard**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, BAE moves to dismiss SpaceKey's CPA claim, arguing that SpaceKey has failed to state a claim upon which relief can be granted. In its objection, SpaceKey contends that BAE's motion should be treated as one for judgment on the pleadings, under Rule 12(c). This distinction matters, in SpaceKey's view, because a court ruling on a Rule 12(c) motion must consider not just the factual allegations in the plaintiff's complaint (or, in this case, the defendant's counterclaim), but must also consider factual allegations from other pleadings. Specifically, SpaceKey seeks to have the court consider, in addition to its own counterclaim, BAE's amended complaint and BAE's answer to its counterclaim. BAE disputes SpaceKey's interpretation of Rule 12(c), maintaining that SpaceKey is limited to the facts alleged in its counterclaim. In the alternative, however, BAE argues that even if those other pleadings are considered, it is still entitled to dismissal of SpaceKey's CPA claim.

When a motion to dismiss follows an answer, the motion is properly treated as one for judgment on the pleadings. See Erlich v. Ouellette, Labonte, Roberge and Allen, P.A., ___ F.3d ___, ___, 2011 WL 679433, at *4 n.4 (Feb. 28, 2011) (citing

Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006); 5B Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). "[T]he standards for evaluating both motions are essentially the same." Erlich, 2011 WL 679433, at *4 n.4 (citing Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 49 (1st Cir. 2009)). But, "[t]here is . . . a modest difference between Rule 12(c) and Rule 12(b)(6) motions." Aponte-Torres, 445 F.3d at 54. Specifically, "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Id. (citing 5C Wright & Miller, supra, § 1368). For that reason, and in the interest of vindicating the plaintiff-friendly slant of Rule 12(c), see 5C Wright & Miller, supra, § 1368, at 222-23, the court will consider factual allegations from the pleadings as a whole. That said, the court turns to the relevant standard for evaluating those factual allegations, which is the familiar Rule 12(b)(6) standard. See Erlich, 2011 WL 679433, at *4 n.4.

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). That is, the complaint "must

contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)). But, "naked assertions devoid of further factual enhancement need not be accepted." Plumbers' Union, 632 F.3d at 771 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)). Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." United Auto. Workers, 633 F.3d at 40 (citation omitted). On the other hand, a Rule

4

12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted). That is, "[if] the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Plumbers' Union, 632 F.3d at 771 (citation omitted).

## Background

The relevant facts, drawn from BAE's amended complaint (doc. no. 8, hereinafter "Am. Compl.") and SpaceKey's answer and counterclaim (doc. no. 10, hereinafter "Def.'s Answer" or "Countercl.")[1] are as follows. (SpaceKey also asks the court to consider allegations and admissions in BAE's answer to its counterclaim. The court has done so, but found no factual allegations that have any bearing on the issues before it.)

---

[1] Document no. 10 is titled "Answer, Affirmative Defenses and Counterclaims of SpaceKey Components, Inc." Pages one through nine contain paragraphs numbered one through fifty-three, which make up the answer. Pages nine through twenty contain paragraphs numbered one through fifty-eight, which make up the counterclaim. Accordingly, the paragraphs in the first part of the document will be cited as "Def.'s Answer" while the paragraphs in the second part will be cited as "Countercl."

BAE is a Delaware corporation with an office in Nashua, New Hampshire.  Am. Compl. ¶ 1; Countercl. ¶ 1.  The company also does business by and through an entity called "BAE Systems Information and Electronic Warfare Systems," which is located in Manassas, Virginia.  Def.'s Obj., Ex. B (doc. no. 16-2), at 8.  BAE manufactures and sells specialized goods for use in the defense, security, and aerospace industries.  Am. Compl. ¶ 5.  SpaceKey is a Virginia corporation with offices in Virginia.  Id. ¶ 2.

In 2004, BAE entered into an agreement with SpaceKey ("consultant agreement") under which SpaceKey obligated itself to identify buyers for BAE products in Connecticut, Maryland, and Virginia.  Id. ¶¶ 16-17.  SpaceKey alleges that "the [Consultant] Agreement specifically provides that SpaceKey's primary contact at BAE was to be with Timothy Scott in the Manassas [Virginia] office, and that throughout the life of the Agreement, SpaceKey communicated, with very rare exceptions, exclusively with the Manassas office for all product and billing related issues."  Def.'s Answer ¶ 17.  The consultant agreement also provides that it "shall be construed in accordance with the laws of the State of New Hampshire."  Def.'s Obj., Ex. B, at 6.  While performing its obligations under the consultant agreement, SpaceKey fell into the practice of delivering purchase orders to

BAE listing itself as the buyer, and then reselling the products it ordered from BAE to end users. Am. Compl. ¶ 19.

In 2007, BAE acquired the rights to manufacture and sell a particular field programmable gate array ("FPGA") known as the RH1280, which it called the RH1280B. Countercl. ¶ 34. To announce that it would be selling the RH1280B, BAE issued a press release stating, among other things: "The RH1280B offers a total dose radiation-hardness in excess of 300K rads (Si), the standard for a majority of applications . . . ." Id. In addition, BAE issued certain product specifications to SpaceKey and other consultants, agents, and customers, and represented to SpaceKey and SpaceKey's international clientele, that the RH1280B would meet all the performance specifications of its predecessor, the RH1280. Id. ¶¶ 35-37. SpaceKey makes no factual allegations concerning the exact source of BAE's representations concerning the RH1280B, i.e., whether those statements emanated from BAE's New Hampshire office, its Virginia office, or some other office.

Operating under the consultant agreement, SpaceKey found customers for 800 RH1280B FPGAs. Id. ¶ 38. In June of 2009, BAE told SpaceKey that its RH1280Bs would not meet the 300K rads specification, but three months later, issued a formal statement that the RH1280B would be functionally identical to the RH1280.

Id. ¶ 41.  Again, SpaceKey does not allege the geographic location of the source of that statement.  In December of 2009 and January of 2010, SpaceKey submitted three purchase orders to BAE for RH1280B FPGAs.[2]  The RH1280B failed to meet several of the specifications BAE had said it would meet.  Id. ¶¶ 42, 43.  Based on BAE's representations that the RH1280B would have characteristics it ultimately did not have, and would meet several standards that it ultimately did not meet, SpaceKey asserts, in Count Five of its Counterclaim, that BAE is liable under two provisions of the CPA, RSA §§ 358-A:2, V and VII.

**Discussion**

BAE moves to dismiss, arguing that SpaceKey has failed to allege "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  RSA 358-A:2 (emphasis added).  SpaceKey objects, primarily by identifying what it calls "numerous allegations and admissions in BAE's own pleadings [that] support or suggest an underlying connection with New Hampshire."  Def.'s Obj., at 2.  Those "allegations and admissions" include BAE's allegations, in its amended complaint,

---

[2] Like the consultant agreement, BAE's terms of sale provide that they "shall be interpreted, construed and governed under the laws of the State of New Hampshire."  Def.'s Obj., Ex. A (doc. no. 16-1), at 5.  In addition, that document includes a forum-selection clause identifying the forum for dispute resolution to be "any court of competent jurisdiction in Hillsborough County, New Hampshire."  Id.

8

that: (1) it has offices in Nashua, New Hampshire; and (2) SpaceKey placed a purchase order with BAE, and BAE delivered goods pursuant to that order.[3]  SpaceKey also points out that: (1) BAE's terms of sale direct SpaceKey to make payments to BAE's office in Nashua, New Hampshire,[4] specify the application of New Hampshire law, and require litigation in a New Hampshire forum; and (2) the consultant agreement specifies the application of New Hampshire law and identifies BAE as being located in Nashua, New Hampshire.  Finally, SpaceKey notes that in BAE's answer to its counterclaim, BAE admits that it: (1) issued specifications for the RH1280B FPGA; (2) delivered the products on which SpaceKey bases its claims; and (3) contends that SpaceKey's remedies are limited to those stated in the terms of sale, which require the application of New Hampshire law and litigation in a New Hampshire forum.

As BAE correctly points out, the CPA proscribes only unfair and deceptive acts in "trade or commerce within this state." RSA 358-A:2.  The New Hampshire Supreme Court has yet to address

---

[3] SpaceKey also argues that BAE claims, in its complaint, to be a New Hampshire citizen.  To the contrary, BAE does nothing more that allege that it is not a citizen of Virginia.  Am. Compl. ¶¶ 2, 3.

[4] As noted above, SpaceKey also alleges, in its Answer, that "throughout the life of the [Consultant] Agreement, SpaceKey communicated, with very rare exceptions, exclusively with the Manassas [Virginia] office for all product and billing related issues."  Def.'s Answer ¶ 17.

9

the territorial limitations of the CPA.  For its part, this court has issued only one published decision on the issue, Pacamor Bearings, Inc. v. Minebea Co., 918 F. Supp. 491 (D.N.H. 1996).  In that case, the defendants moved in limine "to bar the introduction of any evidence relative to conduct without the borders of New Hampshire as part of plaintiffs' claim under the state Consumer Protection Act."  Id. at 504.  The court then identified the relevant legal principles:

> The court has been unable to identify any caselaw, either state or federal, interpreting this specific provision of RSA 358-A:2.  However, other courts interpreting similar language have found that the " 'in this state' [language] clearly indicates that the statute is only applicable if the offending conduct took place within the territorial borders of the state . . . ."  Shorter v. Champion Home Builders Co., 776 F. Supp. 333, 339 (N.D. Ohio 1991) (emphasis added).  Thus, irrespective of the locus of the manufacturer or supplier, "it is the activity . . . that is determinative."  Id. (construing the holding of Brown v. Market Dev., Inc., 41 Ohio Misc. 57, 322 N.E.2d 367, 369 (Ohio Common Pleas Ct. 1974)).

Id.  In applying those principles to the facts of the case before him, Judge Devine ruled:

> NHBB conducts its business in New Hampshire. Part of that business is the sale of bearings imported by NMB Corp.  Moreover, NHBB is an integral component part of the Minebea corporate empire.  That this lawsuit pertains to fraudulent conduct allegedly known and perpetuated by a business within the borders of the state satisfies the statutory locality prerequisite notwithstanding the limited amount of direct sales to New Hampshire customers.  It is the "offending conduct" that must occur within the state – the "unfair method of competition or any unfair or

> deceptive act or practice" in trade or commerce – not the actual sale. Defendants' motion in limine is accordingly denied.

Pacamor Bearings, 918 F. Supp. at 504. Unfortunately, the opinion in Pacamor Bearings says little about the facts giving rise to the plaintiff's CPA claim other than to suggest that it was based on false advertising. Thus, it is all but impossible to apply Pacamor Bearings to the facts of this case.

BAE relies primarily on Judge DiClerico's decision in Mueller Co. v. United States Pipe & Foundry Co., No. Civ. 03-170-JD, 2003 WL 22272135 (D.N.H. Oct. 2, 2003), for the proposition that commercial conduct affecting the people of New Hampshire is actionable under RSA 358-A only when that conduct occurs in New Hampshire. In Mueller, a New Hampshire manufacturer sued an Alabama manufacturer for, among other things, making and marketing fire hydrants that infringed its trade dress. Id. at *1-*2. "The plaintiffs contend[ed] that because the harm from U.S. Pipe's alleged infringement of the plaintiffs' mark occurred in New Hampshire, where MII has its principal place of business, that fact alone amount[ed] to unfair competition within New Hampshire in violation of RSA 358-A:2." Id. at *5. Judge DiClerico disagreed. First, he explained that "commercial conduct which affects the people of New Hampshire is actionable under section 358-A:2 only if it

11

occurs within New Hampshire." Id. at *6 (citing Environamics Corp. v. Ferguson Enters., Inc., No. Civ. 00-579-JD, 2001 WL 1134727, at *4 (D.N.H. Sept. 24, 2001); Pacamor Bearings, 918 F. Supp. at 504). Then he held that "[i]n the absence of any alleged unfair method of competition or unfair deceptive act or practice which took place in New Hampshire, the harm suffered by [the plaintiff] within the state does not state a claim under RSA 358-A:2." Id.

SpaceKey counters by citing Judge Barbadoro's decision in Harbour Capital Corp. v. Allied Capital Corp., No. 08-cv-506-PB, 2009 WL 2185449 (D.N.H. July 22, 2009), for the proposition that trade and commerce in New Hampshire is affected by the conduct it alleges in its CPA claim because BAE is located in New Hampshire, has brought suit in New Hampshire, and requires the application of New Hampshire law to disputes with its customers. In Harbour Capital, a New Hampshire leasing and financing company sued an out-of-state corporation for, among other things, instructing one of its subsidiaries to discontinue doing business with the plaintiff. Judge Barbadoro described the dispute over the applicability of the CPA:

> Allied contends that the only unfair and deceptive practice alleged in the Complaint was Allied's instruction to FinPac to discontinue its relationship with Harbour, and that instruction did not occur in New Hampshire. In response, Harbour concedes that Allied's unfair and deceptive act did not occur in New

12

> Hampshire but argues that RSA § 358-A:2 does not require that the action in question take place within the territorial limits of New Hampshire.

Id. at *8. Judge Barbadoro agreed with Harbour, id., and explained his ruling this way:

> None of the cases cited by Allied persuade me that a defendant may injure trade or commerce in New Hampshire but escape liability under RSA § 358-A by remaining outside the state. Thus, I reject Allied's motion to dismiss Count II because Harbour's complaint sufficiently alleges that Allied's allegedly unfair and deceptive act injured trade or commerce within the state.

Id. at *9.

The plaintiffs in Mueller and Harbour Capital were both New Hampshire entities alleging that they had been harmed by the conduct of out-of-state entities. SpaceKey is not a New Hampshire entity, and alleges no injuries sustained in New Hampshire. In Mueller, the plaintiff's CPA claim was based on customer confusion created by trade-dress infringement, and the claim was dismissed because the plaintiff did not allege that any consumer confusion took place in New Hampshire. Here, SpaceKey does not allege that it was misled by BAE's allegedly false representations in New Hampshire. At most, SpaceKey alleges that it was misled by advertising directed toward it from New Hampshire. Thus, Mueller counsels in favor of dismissal. In Harbour Capital, the plaintiff's CPA claim, which survived a motion to dismiss, was based on out-of-state conduct

13

specifically directed toward harming the New Hampshire plaintiff's ability to operate its business.  Here, of course, the positions are reversed.  SpaceKey is not a New Hampshire entity complaining about out-of-state conduct intended to injure New Hampshire commerce; it is an out-of-state entity complaining about conduct originating in New Hampshire that has an extraterritorial effect.  Read together, Mueller and Harbour Capital stand for the proposition that out-of-state defendants can be liable under the New Hampshire CPA if, and only if, their conduct harms a New Hampshire entity and does so by impairing that entity's ability to do business in New Hampshire.

The rule of law derived from Mueller and Harbour Capital is not directly applicable to the facts of this case.  But, to the extent Harbour Capital focuses on the impairment of a plaintiff's ability to conduct its commercial activities in New Hampshire, it does not support SpaceKey's position in this case, as SpaceKey makes no allegation that BAE's conduct involved commercial activities directed toward New Hampshire, or that BAE's conduct adversely affected SpaceKey's ability to do business in New Hampshire.  Rather, the gravamen of SpaceKey's CPA claim would seem to be that BAE's alleged misrepresentations harmed SpaceKey in Virginia by injuring SpaceKey's customers, wherever they might be located.

14

Guidance more directly applicable to the facts of this case is provided by Judge DiClerico's decision in Environamics. In that case, New Hampshire plaintiff Environamics sued Virginia defendant Ferguson under the CPA for, among other things, "shipping a pump to Environamics that was contaminated with hazardous materials, with documentation representing that it had been decontaminated." 2001 WL 1134727, at *3. Ferguson moved to dismiss, arguing, among other things, that "the actions alleged did not occur within New Hampshire as required by RSA 358-A:2." Id. Judge DiClerico disagreed:

> The limitation in RSA 358-A:2 to "conduct of any trade or commerce within this state" has been interpreted to mean that the statute only applies to offending conduct that took place within New Hampshire. See Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 504 (D.N.H. 1996). In count XIII, Environamics alleges that Ferguson engaged in offending conduct when it shipped a contaminated pump with documentation representing that it had been decontaminated. Since Ferguson is a Virginia corporation with a principal place of business in Virginia, it appears from the complaint that the pump was shipped from Virginia. However, the deceptive act of misrepresenting the condition of the pump occurred in New Hampshire when Environamics received the pump and its allegedly false documentation. Therefore, Environamics's claim in Count XIII is sufficient to survive the motion to dismiss.

Id. at *4. While Environamics, like Mueller and Harbour Capital, involved a New Hampshire plaintiff rather than a New Hampshire defendant, the commercial conduct at issue in Environamics is nearly identical to the conduct alleged here,

15

i.e., misrepresenting the quality of goods sold. And, quite clearly, Environamics stands for the proposition that the locus of the conduct proscribed by RSA 358-A:2, V and VII is the place where the misrepresentation is received. Here, that can only be Virginia. Thus, SpaceKey has failed to state a claim against BAE under the New Hampshire CPA, and BAE is entitled to dismissal of Count Five of SpaceKey's counterclaim.

As noted above, SpaceKey identifies various "allegations and admissions" by BAE that, in its view, are sufficient to subject BAE to liability under the CPA. But, as Mueller, Harbour Capital, and Environamics all demonstrate, the relevant question is not where BAE is located, where BAE accepted payment from SpaceKey, or what law the parties chose to use when resolving disputes.[5] Instead, the question is the locus of the offending conduct. Where, as here, a plaintiff alleges offending conduct that took place outside New Hampshire, it fails to state a claim under the CPA.

BAE raises another issue in its motion to dismiss which the court need address only briefly. Specifically, BAE observes that SpaceKey has no standing to assert the claims of third parties and asks the court to dismiss "all counterclaims of

---

[5] While the parties agreed to resolve any disputes under New Hampshire law, their agreement does not expand the scope of the CPA to cover trade and commerce outside New Hampshire.

16

SpaceKey that rely on the rights and interests of its customers or any other third parties." Pl.'s Mem. of Law, at 8. Rather than identifying specific claims that merit dismissal, BAE invites the court to sort through SpaceKey's counterclaims and determine which, if any, assert the rights of third parties. The court declines to do so. Rather, at the appropriate time, and in response to a proper request, the court stands prepared to apply the principles of law BAE has identified. BAE can rest assured that under no circumstances will SpaceKey be granted judgment on claims that properly belong to another entity, or be awarded damages for injuries to other entities.

## Conclusion

For the reasons given, BAE's motion to dismiss, doc. no. 15, is granted to the extent that Count Five of SpaceKey's counterclaim is dismissed.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

Dated: May 4, 2011

cc: Jonathan M. Shirley, Esq.
    Jeffrey C. Spear, Esq.
    Martha Van Oot, Esq.
    Daniel E. Will, Esq.