

## DOMESTIC BUSINESS DEVELOPMENT
## CONSULTANT AGREEMENT

AGREEMENT made by and between BAE SYSTEMS Information and Electronic Systems Integration Inc., a Delaware corporation, acting by and through BAE SYSTEMS Information and Electronic Warfare Systems, 65 Spit Brook Road, P.O. Box 868, Nashua, New Hampshire 03061-0868 (hereinafter "BAE SYSTEMS"), and Space Key Components, Inc., a Virginia corporation, 3926 Filbert Way, Virginia Beach, Virginia 23462 (hereinafter CONSULTANT").

In consideration of the promises and mutual obligations hereafter set forth, the parties hereto agree as follows:

### 1. CONDITIONS

This Agreement is made by BAE SYSTEMS for the purpose of retaining the services of CONSULTANT. This Agreement is expressly made conditional on CONSULTANT's assent to, and strict compliance with, all of the terms and conditions stated below. A material factor in BAE SYSTEMS' decision to retain CONSULTANT was the response to the forms and certifications completed by CONSULTANT prior to and concurrent with the execution of this Agreement.

By execution of this Agreement, CONSULTANT does (for each individual performing services under this Agreement) now so certify and promise full compliance with the provisions of all certifications, forms, contractual provisions, and laws and regulations pertaining to the performance of services by CONSULTANT.

### 2. TERM OF AGREEMENT

A. The term of this Agreement shall commence as of July 8, 2004 and shall remain in effect through January 31, 2007, or until such earlier termination of the consultant services as hereinafter provided. In no event shall BAE SYSTEMS be liable to CONSULTANT hereunder for any services performed by CONSULTANT prior to the term of this Agreement or after its expiration or termination.

B. If the Agreement has not been terminated prior to its expiration, it shall be renewed for an additional term commencing February 1, 2007, and annually thereafter, unless either Party gives the other notice of its intention not to renew the Agreement, no later than ninety (90) days prior to commencement of the renewal term.

### 3. DUTIES OF CONSULTANT

CONSULTANT shall provide consulting services to BAE SYSTEMS as set forth below, at such BAE SYSTEMS facilities and other locations as the performance of services hereunder may require.

CONSULTANT will advise and assist BAE SYSTEMS in identifying suitable, financially qualified buyers for BAE SYSTEMS' Products ("Products") and in effecting the sale of such Products to such buyers in the States of Connecticut and Maryland and in the Commonwealth of Virginia ("Territory"). The Products, Prices and Terms and Conditions governing such sales shall be as set forth in Exhibit A, which BAE SYSTEMS may revise from time to time.

1

01-1295 (6-05)

BAE002501

CONSULTANT's engagement hereunder is nonexclusive in the Territory for the Products listed in Exhibit A. Nothing in this Agreement shall be construed as limiting BAE SYSTEMS' right to contact, or negotiate with, directly or through other intermediaries, any person or entity, including the U.S. Government, concerning the purchase of its Products. In the event that BAE SYSTEMS delivers Products prior to June 30, 2007 or, in the case of Products sold during any renewal of the Agreement, June 30 following the renewal term most recently completed, to a third party in the Territory with whom CONSULTANT, during the term of this Agreement, has had substantial contact on behalf of BAE SYSTEMS or for which CONSULTANT has provided BAE SYSTEMS substantial support services ("Qualified Buyer"), then BAE SYSTEMS shall pay CONSULTANT its fee as provided in Section 4. "Substantial contact" or "substantial support services" shall mean, for this Agreement, that CONSULTANT made the initial contact with the third party, has researched and documented the party's requirements, qualifications and financial resources, and attended at least one meeting with, and submitted at least one written price quotation to such party. For purposes of determining whether CONSULTANT is entitled to a fee, the determination whether CONSULTANT has fulfilled its duties in connection with any sale shall be made in good faith and be within the sole judgment and discretion of BAE SYSTEMS. Such good faith determination by BAE SYSTEMS that CONSULTANT did, or did not, have substantial contact or provide substantial support services with respect to any such sale shall be final.

BAE SYSTEMS shall not be obligated to contact or negotiate with any person or entity concerning the sale of its Products. CONSULTANT acknowledges that the determination of a prospective buyer's acceptability shall be in BAE SYSTEMS' sole discretion.

CONSULTANT's primary contact with BAE SYSTEMS shall be Timothy R. Scott referred to hereinafter as the Agreement Monitor.

It is understood and agreed that CONSULTANT shall not engage in any effort on behalf of BAE SYSTEMS to lobby (i.e., to influence or attempt to influence) Congress, any Federal agency, any Member of Congress, any Federal officer, or any Federal agency employee or employee of a Member of Congress, unless such activity is expressly directed or approved by the Agreement Monitor in writing.

4. COMPENSATION FOR SERVICES

A. As full compensation for services performed by CONSULTANT hereunder, BAE SYSTEMS agrees to pay CONSULTANT, upon completion of each sale by BAE SYSTEMS of Products to a Qualified Buyer in the Territory a fee equal to five per cent (5%) of the Net Sales Price of said Products, provided that the Products be delivered prior to June 30, 2007 or, in the case of Products sold during any renewal of the Agreement, June 30 following the renewal term most recently completed. "Net Sales Price" shall include any applicable trade discount, but shall be exclusive of any applicable federal, state or local sales, use, excise or similar taxes, however designated, levied upon, or measured by the sale, the sales price or use of the Products as well as any customs duties, fees or taxes, however characterized, transportation charges, special packaging or insurance costs, all of which, where applicable, shall be separately itemized by BAE SYSTEMS and paid by buyer. Net Sales Prices and terms of sale for the Products are set forth in Exhibit A-1 which may be modified by BAE SYSTEMS, from time to time, on thirty (30) days notice. The fee shall be earned on a proportional basis upon receipt by BAE SYSTEMS of each installment of the Net Sales Price.

It is understood that if a sales contract should be rescinded, revoked or repudiated by a buyer for reasons beyond BAE SYSTEMS' control or by BAE SYSTEMS for a buyer's breach of contract or by either party for force majeure causes, CONSULTANT shall not be entitled to a fee with respect to such sales, except *pro rata,* to the extent of any amount BAE SYSTEMS may have previously received and to which the buyer

2

asserts no claim for refund or any recovery that BAE SYSTEMS obtains based on buyer's breach, after deduction of BAE SYSTEMS' costs, including attorneys' fees.

Commissions shall be payable no more frequently than monthly, based upon Qualified Sales made and Net Sales Prices received by BAE SYSTEMS as of the fifteenth (15th) day of the preceding month.

B. CONSULTANT shall assume and discharge from CONSULTANT's own account all costs and expenses incurred by CONSULTANT and shall indemnify BAE SYSTEMS and hold BAE SYSTEMS harmless from and against all loss, cost, expense, claims, damage, or liability incurred, contracted, or created by CONSULTANT which is not specifically assumed in writing by BAE SYSTEMS.

## 5. RELATIONSHIP OF PARTIES

In the performance of services under this agreement, CONSULTANT's relationship to BAE SYSTEMS shall be that of a consultant to provide services on an independent-contractor basis. As such, CONSULTANT will not be an employee of BAE SYSTEMS and will not be entitled to unemployment insurance, worker's compensation coverage, or any other type or form of insurance or benefit normally provided for BAE SYSTEMS employees. Furthermore, BAE SYSTEMS will not be responsible for the withholding of federal income, state income, or social security taxes from fees paid to CONSULTANT. CONSULTANT's authority is limited to providing consulting services, and CONSULTANT shall have no authority, without the express written consent of BAE SYSTEMS, to incur any obligation or liability, or make any commitments on behalf of BAE SYSTEMS.

## 6. PROPRIETARY AND SENSITIVE INFORMATION

BAE SYSTEMS may, from time to time, furnish CONSULTANT with literature, data, or technical information which BAE SYSTEMS considers necessary to the CONSULTANT for the performance of services pursuant to this Agreement. All information and data received from BAE SYSTEMS and all information and data generated or developed in the performance of this Agreement shall be regarded as proprietary information and data of BAE SYSTEMS and will be held in strict confidence by CONSULTANT and its employees and will be used solely for purposes of performing this Agreement. In the event any of the material is classified or restricted, BAE SYSTEMS shall so inform CONSULTANT and CONSULTANT agrees to disclose this information only to individuals or organizations approved by BAE SYSTEMS. CONSULTANT also agrees to return all such materials as BAE SYSTEMS may request or upon the expiration or termination of this Agreement, whichever shall first occur. It is agreed that this provision shall survive the expiration or termination of this Agreement.

## 7. ACCESS TO CLASSIFIED AND EXPORT CONTROLLED INFORMATION

Performance of this Agreement may require access to information involving National Security up to and including TOP SECRET. If such access is required, CONSULTANT shall furnish BAE SYSTEMS' Security Department with all data required to obtain or verify a personal security clearance with access to the appropriate level. Notwithstanding any provision of this Agreement to the contrary, CONSULTANT shall not perform work involving National Security information until CONSULTANT's security clearance has been obtained or verified by BAE SYSTEMS. Should CONSULTANT be denied, or lose, its clearance for any reason, this Agreement may be terminated immediately by BAE SYSTEMS.

CONSULTANT agrees to comply with U.S. Government and BAE SYSTEMS security regulations applicable to the handling of classified information. CONSULTANT agrees to return all classified or

3

restricted materials as BAE SYSTEMS may request or upon the expiration or termination of CONSULTANT's security clearance or this Agreement, whichever shall first occur.

CONSULTANT agrees to comply with all United States export laws and regulations applicable to the to the Products, including, without limitation, the International Traffic in Arms Regulations and Export Administration Regulations. CONSULTANT agrees not to transfer Products, or disclose technical data pertaining to them, to foreign persons without first obtaining an export license or other authorization from the United States Government.

## 8. GOVERNMENT AND COMPETITOR DATA AND INFORMATION

CONSULTANT agrees that it will not solicit, attempt to obtain, or receive any information that is security classified or procurement sensitive, directly or indirectly, from the U.S. Government or any other source, where it is clear that release is unauthorized or in circumstances where there is reason to believe that such information cannot lawfully be in BAE SYSTEMS' possession. The same prohibitions apply to information of another BAE SYSTEMS that is business confidential or proprietary. For the purpose of this Agreement, the term "information" includes documents, video and audio materials, oral transmissions, electronic data, and any other method or means by which information might be conveyed.

## 9. INTELLECTUAL PROPERTY

CONSULTANT agrees to assign, convey and transfer to BAE SYSTEMS, without requirement for further consideration, each and every invention, discovery, patent and improvement relating to the field of effort covered by the Statement of Work, conceived or developed by CONSULTANT during performance of the Agreement and, upon request, shall execute any required papers and furnish all reasonable assistance to BAE SYSTEMS to vest all right, title and interest in such matters in BAE SYSTEMS.

## 10. CERTIFICATIONS AND REPRESENTATIONS

A. By execution of this Agreement, CONSULTANT represents and certifies that he or she has not been convicted of, or pleaded guilty to, a federal offense involving fraud, corruption or moral turpitude and is not now listed by any federal agency as debarred, suspended or proposed for suspension or debarment and is not otherwise ineligible for federal procurement programs. If CONSULTANT is a corporation, partnership or other form of business organization, the representations and certification shall apply not only to the individual(s) who will be performing the consulting services, but also to the principal officers and owners of the business organization.

B. In performing this Agreement, CONSULTANT agrees to comply with applicable laws and regulations and to not make or permit to be made, or knowingly allow a third party to make, any improper payments, or to perform any unlawful act. To that end CONSULTANT will execute the Certifications attached to this Agreement and agrees to provide supporting information and to execute such additional certifications as may be required to permit BAE SYSTEMS to fully comply with applicable government regulations which may become effective during the term of this Agreement.

Failure or refusal to furnish in a timely manner any required certificate or disclosure, upon request from BAE SYSTEMS or a U.S. Government procurement authority, shall be the basis for immediate termination of this Agreement.

4

BAE002504

Case 1:10-cv-00370-LM Document 31-4 Filed 07/01/11 Page 5 of 13

C. CONSULTANT represents that CONSULTANT has made, and will make during the term of this Agreement, full disclosure of each instance where CONSULTANT is currently providing a supplier, customer, or competitor of BAE SYSTEMS services related to similar products or has provided such services during the preceding twelve (12) months. CONSULTANT further represents that he or she will, prior to entering into any such arrangements in the future, disclose its intentions to BAE SYSTEMS and will provide such disclosures or certifications as may be requested by BAE SYSTEMS in order to facilitate its compliance with applicable laws and regulations.

D. CONSULTANT represents that he or she will not, in performance under this agreement, have any contact with any foreign BAE SYSTEMS customer or any foreign government official for the purpose of collecting marketing intelligence or providing marketing-related services for markets outside the U.S.

E. CONSULTANT represents that he or she is not an official or employee of the U.S. Government or an active member of the U.S. Armed Forces, and is not prohibited by law or regulation from receiving compensation from BAE SYSTEMS or performing this Agreement.

F. CONSULTANT acknowledges that he or she has received a copy of BAE SYSTEMS' Domestic Consultant Orientation; Ethics and Business Conduct which is set forth in Exhibit B and represents that CONSULTANT will comply with all applicable provisions thereof.

G. Prior Agreement. CONSULTANT's President, William C. Key, was previously a principal of Military and Aerospace Sales, LLC, the party with whom an Agreement was entered by BAE SYSTEMS July 8, 2004, for services similar to those herein. CONSULTANT represents and warrants that no sales of Products to Qualified Buyers have been made by Military and Aerospace Sales, LLC or its principals, rather that Military and Aerospace Sales, LLC sold only out-of-manufacture devices which it had purchased from BAE SYSTEMS for its own account and that, the sale of such devices having been completed, Military and Aerospace Sales, LLC is to be dissolved. CONSULTANT further represents and warrants that William C. Key is under no obligation to Military and Aerospace Sales, LLC in regard to any sales of Products made by William C. Key or by CONSULTANT and that Military and Aerospace Sales, LLC has no claim upon BAE SYSTEMS based upon such sales now or in the future. CONSULTANT SHALL DEFEND, INDEMNIFY AND HOLD BAE SYSTEMS HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS OF MILITARY AND AEROSPACE SALES, LLC AND ANY PERSONS CLAIMING THROUGH MILITARY AND AEROSPACE SALES, LLC, BASED UPON ANY SALE OF PRODUCTS TO QUALIFIED BUYERS FROM JULY 8, 2004 ONWARD. CONSULTANT ACKNOWLEDGES AND AGREES THAT ANY BREACH OF THESE REPRESENTATIONS AND WARRANTIES OR FAILURE TO CARRY OUT THE DEFENSE AND INDEMNITY OBLIGATIONS HEREIN SHALL BE GROUNDS FOR IMMEDIATE TERMINATION OF THIS AGREEMENT AND FORFEITURE OF ALL COMPENSATION HEREUNDER.

11. ASSIGNMENT

Neither this Agreement nor any interest herein shall be assignable by CONSULTANT. BAE SYSTEMS reserves the right to assign its rights and obligations hereunder to any subsidiary, affiliate, or successor in interest.

12. TERMINATION

A. Either Party may terminate this Agreement without cause by sixty (60) days' written notice to the other Party. In the event of termination with or without cause, BAE SYSTEMS' obligations will be limited to fees earned by CONSULTANT to the effective date of termination. Any reports in progress at the time of

BAE002505

termination, for cause or otherwise, will be submitted by CONSULTANT to BAE SYSTEMS at no additional fee.

B. This Agreement shall terminate immediately and all payments due shall be forfeited if, in rendering services hereunder, improper payments are made, unlawful conduct is engaged in, or any part of the fee or expenses payable under this Agreement is used for an illegal purpose.

13. NOTICES

A. All formal notices and communications relating to this Agreement shall be sent by mail and shall be deemed to have been given on the day said notice is placed in the U.S. mail system, postage prepaid, and addressed to the other Party as provided below.

B. Notices to BAE SYSTEMS shall be addressed to:

       BAE SYSTEMS Information and Electronic Warfare Systems
       9300 Goodwin Drive
       Manassas, VA 20110
       Attn: Timothy R. Scott, Mail Code MVA01014

C. Notices to CONSULTANT shall be addressed to:

       Space Key Components, Inc.
       3926 Filbert Way
       Virginia Beach, Virginia 23462
       Attn: William C. Key, President

14. EXCLUSIVITY OF SERVICES

CONSULTANT's services to BAE SYSTEMS will be on an exclusive basis for the Products. CONSULTANT shall not provide services to any competitor of BAE SYSTEMS with regard to such products without BAE SYSTEMS' prior, written permission. If this Agreement is terminated for any reason, then CONSULTANT will be released from this provision. Such release notwithstanding, CONSULTANT acknowledges the continuing obligation to hold in strict confidence, and agrees not to reveal, any of BAE SYSTEMS' proprietary information to anyone.

15. ENTIRE AGREEMENT AND CHOICE OF LAW

This Agreement, together with all amendments, (a) shall be construed in accordance with the laws of the State of New Hampshire; and (b) constitutes the entire understanding of the parties concerning its subject matter; (c) may be altered or amended only in writing signed by both parties concurrently with or subsequent to its date of execution; and (d) supersedes all prior written or oral understandings of the parties (including predecessors or assigns) concerning its subject matter.

BAE002506

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the dates below indicated.

BAE SYSTEMS INFORMATION AND
ELECTRONIC SYSTEMS INTEGRATION INC.

By: _____

Name:  Christopher B. Russell

Title:  Director, Contracts

Date:  12/21/06

SPACE KEY COMPONENTS, INC.

By: _____

Name:  William C. Key

Title:  President

Date:  1/12/07

7

BAE002507

## EXHIBIT A

## PRODUCTS AND PRICES

| Part Number | Description | Level | 25 - 99 | 100 - 199 | 200 - 299 | 300 - 399 | 400 - 499 | 500 - 999 | 1000+ |
|---|---|---|---|---|---|---|---|---|---|
| BAE SYTEMS Product List | | | | | | | | | |

BAE SYTEMS Product List
Excerpt from March 2004 Catalog of Prices
Sales Price

| Part Number | Description | Level | 25 - 99 | 100 - 199 | 200 - 299 | 300 - 399 | 400 - 499 | 500 - 999 | 1000+ |
|---|---|---|---|---|---|---|---|---|---|
| 251A136-112 | 512Kx8 SRAM, 15ns | Prototype | $1,699 | $1,699 | $1,699 | $1,699 | $1,699 | $1,699 | $1,457 |
| 251A136-113 | 512Kx8 SRAM, 15ns | Engineering | $1,602 | $1,602 | $1,602 | $1,602 | $1,602 | $1,602 | $1,361 |
| 251A136-117 | 512Kx8 SRAM, 15ns | T+ (V Flow) | $3,919 | $3,674 | $3,429 | $3,184 | $2,939 | $2,694 | $2,449 |
| 251A136-119 | 512Kx8 SRAM, 15ns | T (Q Flow) | $3,796 | $3,551 | $3,306 | $3,062 | $2,817 | $2,572 | $2,327 |
| 251A136-122 | 512Kx8 SRAM, 17ns | Prototype | $1,689 | $1,689 | $1,689 | $1,689 | $1,689 | $1,689 | $1,448 |
| 251A136-123 | 512Kx8 SRAM, 17ns | Engineering | $1,593 | $1,593 | $1,593 | $1,593 | $1,593 | $1,593 | $1,351 |
| 251A136-127 | 512Kx8 SRAM, 17ns | T+ (V Flow) | $3,674 | $3,429 | $3,184 | $2,939 | $2,694 | $2,449 | $2,204 |
| 251A136-129 | 512Kx8 SRAM, 17ns | T (Q Flow) | $3,551 | $3,306 | $3,062 | $2,817 | $2,572 | $2,327 | $2,082 |
| 251A172-412 | 512Kx32 SRAM, 15ns | Prototype | $4,066 | $4,066 | $4,066 | $4,066 | $4,066 | $4,066 | $3,564 |
| 251A172-413 | 512Kx32 SRAM, 15ns | Engineering | $3,669 | $3,669 | $3,669 | $3,669 | $3,669 | $3,669 | $3,187 |
| 251A172-417 | 512Kx32 SRAM, 15ns | T+ (V Flow) | $8,863 | $8,309 | $7,755 | $7,201 | $6,647 | $6,093 | $5,539 |
| 251A172-419 | 512Kx32 SRAM, 15ns | T (Q Flow) | $8,586 | $8,032 | $7,478 | $6,924 | $6,370 | $5,816 | $5,262 |
| 251A172-422 | 512Kx32 SRAM, 17ns | Prototype | $4,016 | $4,016 | $4,016 | $4,016 | $4,016 | $4,016 | $3,514 |
| 251A172-423 | 512Kx32 SRAM, 17ns | Engineering | $3,621 | $3,621 | $3,621 | $3,621 | $3,621 | $3,621 | $3,138 |
| 251A172-427 | 512Kx32 SRAM, 17ns | T+ (V Flow) | $8,309 | $7,755 | $7,201 | $6,647 | $6,093 | $5,539 | $4,985 |
| 251A172-429 | 512Kx32 SRAM, 17ns | T (Q Flow) | $8,032 | $7,478 | $6,924 | $6,370 | $5,816 | $5,262 | $4,708 |
| 261A137-512 | 512Kx40 SRAM, 15ns | Prototype | $4,624 | $4,624 | $4,624 | $4,624 | $4,624 | $4,624 | $4,033 |
| 251A137-513 | 512Kx40 SRAM, 15ns | Engineering | $4,296 | $4,296 | $4,296 | $4,296 | $4,296 | $4,296 | $3,968 |
| 251A137-517 | 512Kx40 SRAM, 15ns | T+ (V Flow) | $9,917 | $9,209 | $8,501 | $7,792 | $7,084 | $6,375 | $6,021 |
| 251A137-519 | 512Kx40 SRAM, 15ns | T (Q Flow) | $9,563 | $8,855 | $8,146 | $7,438 | $6,730 | $6,021 | $5,667 |
| 251A137-522 | 512Kx40 SRAM, 17ns | Prototype | $4,592 | $4,592 | $4,592 | $4,592 | $4,592 | $4,592 | $4,000 |
| 251A137-523 | 512Kx40 SRAM, 17ns | Engineenng | $4,264 | $4,264 | $4,264 | $4,264 | $4,264 | $4,264 | $3,936 |
| 251A137-527 | 512Kx40 SRAM, 17ns | T+ (V Flow) | $9,209 | $8,501 | $7,792 | $7,084 | $6,375 | $6,021 | $5,667 |
| 251A137-529 | 512Kx40 SRAM, 17ns | T (Q Flow) | $8,855 | $8,146 | $7,438 | $6,730 | $6,021 | $5,667 | $5,313 |
| 251A625-152 | 512Kx8 SRAM, 55ns | Prototype | $1,510 | $1,510 | $1,510 | $1,510 | $1,510 | $1,510 | $1,399 |
| 251A625-153 | 512Kx8 SRAM, 55ns | Engineering | $1,454 | $1,454 | $1,454 | $1,454 | $1,454 | $1,454 | $1,343 |
| 251A625-157 | 512Kx8 SRAM, 55ns | T+ (V Flow) | $2,465 | $2,397 | $2,328 | $2,260 | $2,191 | $2,123 | $2,055 |
| 251A625-159 | 512Kx8 SRAM, 55ns | T (Q Flow) | $2,328 | $2,260 | $2,191 | $2,123 | $2,055 | $1,986 | $1,781 |
| 229A305-252 | 512Kx16 SRAM, 55ns | Prototype | $2,296 | $2,296 | $2,296 | $2,296 | $2,296 | $2,296 | $2,052 |
| 229A305-253 | 512Kx16 SRAM, 55ns | Engineering | $2,133 | $2,133 | $2,133 | $2,133 | $2,133 | $2,133 | $1,889 |
| 229A305-257 | 512Kx16 SRAM, 55ns | T+ (V Flow) | $4,159 | $3,970 | $3,781 | $3,592 | $3,403 | $3,214 | $3,025 |
| 229A305-259 | 512Kx16 SRAM, 55ns | T (Q Flow) | $3,970 | $3,781 | $3,592 | $3,403 | $3,214 | $3,025 | $2,836 |
| 229A305-452 | 1Mx16 SRAM, 55ns | Prototype | $3,789 | $3,789 | $3,789 | $3,789 | $3,789 | $3,789 | $3,520 |
| 229A305-453 | 1Mx16 SRAM, 55ns | Engineering | $3,613 | $3,613 | $3,613 | $3,613 | $3,613 | $3,613 | $3,458 |
| 229A305-457 | 1Mx16 SRAM, 55ns | T+ (V Flow) | $5,900 | $5,726 | $5,553 | $5,379 | $5,206 | $5,032 | $4,859 |
| 229A305-459 | 1Mx16 SRAM, 55ns | T (Q Flow) | $5,726 | $5,553 | $5,379 | $5,206 | $5,032 | $4,859 | $4,685 |

## TERMS OF SALE

Commercial Purchasers: Per Terms of Sale – Commercial/Domestic attached hereto, which may be modified, from time to time, by BAE SYSTEMS.

Deliveries of Product are twenty (20) weeks after receipt and acceptance of Order by BAE SYSTEMS for T and T+ Level Devices. Deliveries of Prototype and Engineering Devices shall be four (4) weeks after receipt and acceptance of Order by BAE SYSTEMS.

BAE002508



**TERMS OF SALE - COMMERCIAL/DOMESTIC**
**(Rev. – 11/06)**

Where used herein the term "BAE SYSTEMS" shall refer to BAE SYSTEMS Information and Electronic Systems Integration Inc., acting by and through BAE SYSTEMS Space Systems and Electronics; "Proposal" shall mean BAE SYSTEMS' offer letter, quotation or proposal, as appropriate; "Deliverables" shall refer to the hardware and software items and services ordered; "Order" shall refer to the agreement between the parties to which these terms pertain and "Buyer" shall denote the party placing the Order. BAE SYSTEMS' Proposal is subject in every case to the following terms and conditions.

1.      **Agreement of Sale: Acceptance:** No order or agreement for the purchase from ,and sale by, BAE SYSTEMS of hardware and software items and services becomes a contract unless accepted by BAE SYSTEMS. BAE SYSTEMS' acceptance of the Order is expressly made conditional on Buyer's assent to the terms contained herein, the Proposal and any Special Conditions (if any) attached. Any terms and provisions of Buyer's purchase order or other documents which are inconsistent with the terms and conditions hereof are expressly rejected and shall not be binding upon BAE SYSTEMS. Accordingly, the terms, and conditions contained herein shall supersede any provisions, terms and conditions contained in any purchase order or other writing Buyer may have issued or may hereafter issue, and the rights of the parties shall be governed exclusively by the provisions, terms, and conditions hereof. Buyer expressly waives any rights available to it under Section 2-207 of the Uniform Commercial Code to contest the provisions of this document.

2.      **Deliverables:** BAE SYSTEMS will provide the required hardware articles, software, data and/or services ("Deliverables") more fully described in the Proposal or specifications made part of the Order. Schedules and time of performance of the services and work to be performed will be as set forth in the Proposal or as mutually agreed upon, subject to availability of BAE SYSTEMS personnel. All work shall be performed at BAE SYSTEMS' facilities unless otherwise mutually agreed. Any Deliverable which consists of BAE SYSTEMS' computer programming code shall be referred to as "Software" and the Deliverable material which describes the use of the Software shall be referred to as "Software Documentation". Any such Deliverables which have been modified, enhanced, refined, altered or combined with another substance or material by Buyer shall hereafter be referred to as "Altered Goods".

3.      **Delivery/Risk of Loss:** Delivery is FOB BAE SYSTEMS' facility identified in the Order or Proposal. Risk of loss will pass to Buyer upon BAE SYSTEMS' tender to Buyer's carrier at BAE SYSTEMS' facility . If Buyer fails to specify a carrier, BAE SYSTEMS will deliver to a carrier it deems most appropriate. Delivery dates quoted are BAE SYSTEMS' best estimate of the delivery schedule. BAE SYSTEMS reserves the right to substitute reasonable alternative delivery dates without liability or penalty, in the event the delay be due to fire, flood, accidents, severe weather, labor stoppages, inability to secure materials or labor, transportation difficulties, government acts or regulations, insolvency of key suppliers or other reasons beyond BAE SYSTEMS' control.

4.      **Final Inspection and Acceptance:** Final inspection and acceptance shall occur at BAE SYSTEMS' facility upon satisfactory completion of acceptance testing which will be performed by BAE SYSTEMS, in accordance with BAE SYSTEMS' Test Procedures. Upon satisfactory completion of acceptance testing, a Certificate of Compliance will be executed by BAE SYSTEMS' Quality Assurance Organization and be furnished to Buyer

BAE002509

5.    **Prices:** Prices for the Deliverables are as set forth in the Proposal and are exclusive of any applicable federal, state or local sales, use, excise or similar taxes, however designated, levied upon, or measured by the sale, the sales price or use of Deliverables or material or services required in the performance of this Order.  BAE SYSTEMS will list separately on its invoice any such taxes applicable to any such Deliverables, and payable by Buyer, unless Buyer furnishes to BAE SYSTEMS evidence of exemption (e.g., a Resale Certificate, Tax Exempt Certificate, or Direct Pay Certificate) acceptable to the taxing authority.   Prices do not include any customs duties, fees or taxes, however characterized, transportation charges or insurance costs, all of which, where applicable, shall be paid by Buyer.  Total Price includes license fees for all Software Deliverables.  Total Price includes packaging in accordance with BAE SYSTEMS' standard commercial practice.  Special packaging will be at Buyer's expense.

6.    **Payment:** Unless otherwise specified in writing by BAE SYSTEMS, terms of payment for Buyer are the earlier of net thirty (30) days from the date of invoice or upon delivery.  Payment shall be in U.S. dollars, net cash, Nashua, New Hampshire.  Payments are unconditional and shall be made as specified in the Order, without recourse, set off, or discount.  If Buyer shall fail to make any payment in accordance with the terms and conditions hereof, BAE SYSTEMS, in addition to its other rights and remedies, may, at its option, defer shipments or deliveries hereunder, or under any other contract with Buyer.  BAE SYSTEMS reserves the right to require payment before delivery if credit information on Buyer is lacking or unfavorable.  Buyer will execute and furnish to BAE SYSTEMS any security interests and UCC-1 forms necessary to protect BAE SYSTEMS' interest in the Deliverables until full payment of the Total Price is made.

7.    **Buyer's Default: Termination:** Without prejudice to any other rights or remedies available to BAE SYSTEMS, BAE SYSTEMS shall have the right and option to immediately terminate this Order upon written notice to Buyer in the event of the occurrence of one or more of the following: (i) If Buyer breaches any of the terms and conditions of this Order, including but not limited to the failure to perform any obligation hereunder or make any payment due hereunder; or (ii) If Buyer shall make an assignment for the benefit of creditors, or file a petition in bankruptcy, or be adjudged bankrupt or become insolvent, or be placed in the hands of a receiver, or otherwise be involuntarily placed into bankruptcy, or otherwise have its charter of incorporation relinquished or canceled.  The equivalent of any of the proceedings or acts referred to in this paragraph, though known and/or designated by some other name or term, shall likewise constitute a ground for termination of this Order.  In the event of default, Buyer shall be liable to BAE SYSTEMS for all damages or losses, including loss of reasonable profits, and for costs and expenses, including attorney's fees sustained by BAE SYSTEMS.

8.    **BAE SYSTEMS Warranty:** BAE SYSTEMS warrants and represents as follows:

      (a)    Title:  BAE SYSTEMS warrants that title to hardware Deliverables conveyed shall be good and that the Deliverables are free of any security interest or lien except that BAE SYSTEMS shall have a security interest in the Deliverables until the purchase price is paid in full.

      (b)    Defects in Hardware:  BAE SYSTEMS warrants that, at the time of delivery, any hardware Deliverables, shall be free from defects in material and workmanship under normal usage for a period of one (1) year after delivery, but BAE SYSTEMS' sole liability under this warranty shall be limited to the repair or replacement of the Deliverables returned to BAE SYSTEMS or the refund of its price, at BAE SYSTEMS' option.  Notice of any defect shall be given to BAE SYSTEMS in writing and Buyer shall prepay transportation to and from BAE SYSTEMS' plant.  BAE SYSTEMS shall have no liability under Warranty for (I) Altered Goods; (ii) as to Deliverables which Buyer has not maintained in accordance with

10

BAE SYSTEMS' maintenance manuals or (iii) Deliverables that have been abused, repaired, or misused by Buyer or third parties. This warranty shall not apply to expendables and consumable parts.

(c)     Defects in Software: BAE SYSTEMS warrants that, from the date of delivery, its Software media delivered hereunder shall be free from defects in material and workmanship for a period of 90 days. BAE SYSTEMS' sole liability under this warranty shall be to replace the defective media.

(d)     Patents: BAE SYSTEMS will defend Buyer against any claim of infringement of a United States patent brought against Buyer to the extent that such claim pertains to the Deliverables acquired hereunder, provided that Buyer first gives BAE SYSTEMS prompt written notice of such claim and the right to maintain sole control of the defense and all negotiations for settlement or compromise of such claim. If a final injunction is obtained against Buyer's use of the Deliverables or portion thereof as a result of infringement of a United States patent, BAE SYSTEMS will, at its option and expense, either procure for Buyer the right to continue using the Deliverables, replace or modify them so they become noninfringing, or grant Buyer credit for the then current value of the Deliverables, or potion thereof, as mutually agreed upon and accept its return. Under the terms of this Order, BAE SYSTEMS will not accept any liability nor hold any person harmless from infringement claims relating to: (i) units, devices and Deliverables supplied by BAE SYSTEMS which have been manufactured or produced by others and which carry the original manufacturer's or producer's patent indemnification; (ii) Deliverables purchased hereunder but altered by Buyer or others; or (iii) a combination of the Deliverables hereunder and other equipment, except that BAE SYSTEMS may at its option defend such a claim of type (ii) or (iii), to the extent that such claim pertains to the Deliverables acquired hereunder. The foregoing states the entire liability of BAE SYSTEMS with respect to infringement of patents by the Deliverables or any part thereof or by their use. This patent warranty shall be inapplicable, if Deliverables are to be resold, transferred, licensed or otherwise supplied to the U. S. Government.

(e) **EXCLUSIONS/LIMITATIONS:  THE FOREGOING CONSTITUTES BAE SYSTEMS' ENTIRE WARRANTY AND BUYER'S SOLE REMEDY WITH RESPECT TO ANY DEFECT OR NONCONFORMANCE IN DELIVERABLES PROVIDED BY BAE SYSTEMS.     THESE WARRANTIES AND REMEDIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, NON-INFRINGEMENT OR THOSE ARISING FROM COURSE OF DEALING OR USAGE IN TRADE.**

9.     **Protection of BAE SYSTEMS' Intellectual Property:** Buyer acknowledges and agrees that BAE SYSTEMS has invested substantial resources in the design and development of the Deliverables provided under the Order. The Total Price set forth does not reflect the cost to BAE SYSTEMS of such design and development. BAE SYSTEMS reserves all rights to the designs of the Deliverables and to the intellectual property contained therein. Buyer's acquisition of the Deliverables under the Order shall not be construed to confer any rights upon Buyer by implication, estoppel, or otherwise as to any BAE SYSTEMS technology, trade secrets, or know-how. Buyer shall not copy, reproduce, reverse engineer, decompile, or disassemble Deliverables and/or their designs. Buyer shall not use, either directly or indirectly, in whole or in part, any trademark, service mark, trade name, corporate name, or other mark, name, title or term that is now owned, created, used or licensed by BAE SYSTEMS, or hereafter may be owned, created, used or licensed by BAE SYSTEMS (collectively, "Trade Names") except in the manner and to the extent that BAE SYSTEMS may specifically authorize in writing prior to any such use. Except as provided herein, BAE SYSTEMS does not grant to Buyer any right, title or interest in or to any software, trade secret, copyright, patent or Trade Names, all of which are exclusively owned by and reserved to BAE SYSTEMS. If this Order be placed under a U. S. Government prime contract or subcontract thereunder, then the foregoing

11

provisions shall be deemed so modified as may be necessary to comply with any mandatory contract flowdown provisions relating to U. S. Government rights in patents, copyrights, technical data or computer software.

10.     **Software License:** To the extent that Software is provided as a Deliverable under this Order, it is expressly understood and agreed that Buyer has not purchased or otherwise taken title to the Software. Instead, Buyer shall receive only a limited, nonexclusive, non-transferable, indivisible, single copy, single use, perpetual object code license to use the Software only in conjunction with the Deliverables. No other use is permitted except as expressly authorized by BAE SYSTEMS in writing. Title and design rights in and to the Software and any derivative works shall remain at all times in BAE SYSTEMS. These terms shall serve as the "license" governing Buyer's use of the Software. Buyer shall accept all third party "pass through" licenses for any third party software furnished with the Deliverables.

11.     **Compliance with Laws:** Buyer agrees to comply with all applicable laws, codes and regulations (including export administration regulations) and assumes the responsibility for providing and installing any and all devices for the protection of safety and health relative to the Deliverables. Buyer will not export the Deliverables outside the United States or provide them to non-U.S. citizens without first obtaining the necessary Government authorizations and export approvals.

12.     **Non-Assignment:** Buyer shall not have the right, either voluntarily or by operation of law, to assign, sublicense, transfer, encumber or otherwise dispose of all or any part of its interest in this Order without the prior written consent of BAE SYSTEMS.

13.     **Limitation of Liability:** BAE SYSTEMS shall not be liable to Buyer for consequential (to include lost profits and business interruption), incidental, special, punitive/exemplary damages alleged to arise from, or relate to the Deliverables and/or this Order however or whenever caused. BAE SYSTEMS' cumulative liability (if any) to Buyer for all claims of direct damage of any kind resulting from BAE SYSTEMS' performance or breach of this Order or from the Deliverables furnished hereunder shall not exceed, to the extent collected by BAE SYSTEMS, the equivalent of a refund of the Price of the Deliverable(s) which is(are) the subject of a claim.

14.     **Indemnity:** Buyer shall defend, indemnify and hold harmless BAE SYSTEMS, together with its affiliated companies, and the officers, directors, employees and agents of each, from and against any and all losses, damages, liabilities, claims, demands and causes of action arising out of (1) an allegation that the use of the Deliverables, either in connection with other material or equipment, or in the operation of any process, or as used in any Altered Goods infringes any patent or other intellectual property right, (2) any allegation that the Deliverables infringe any patent or other intellectual property right, when such Deliverables were manufactured/modified pursuant to Buyer's designs, specifications and/or formulae and were not normally offered for sale by BAE SYSTEMS, (3) Buyer's failure to comply with the provisions of Paragraphs 9 or 11 herein, (4) allegations of personal injury to Buyer's employees, agents, servants and subcontractors or third parties, either arising from or relating to the Deliverables or from said person's presence on Sander's premises and/or (5) damage to property of Buyer, Buyer's employees, agents, servants and subcontractors or third parties arising from the Deliverables.

15.     **Severability:** If any provision of this Order be held invalid or unenforceable, the remainder of the Order shall continue in full force and effect.

16.     **Waivers:** No release, discharge or waiver of any provision hereof shall be enforceable against or binding upon either party hereto unless in writing and executed by both parties hereto. Neither the failure to

12

BAE002512

insist upon strict performance of any of the agreements, terms, covenants or conditions hereof, nor the acceptance of moneys due hereunder with knowledge of a breach of this Order, shall be deemed a waiver of any rights or remedies that either party hereto may have or a waiver of any subsequent breach or default in any such agreements, terms, covenants and conditions. Further, no waiver by either party of any breach or default by the other party shall constitute a waiver of any other breach or default of the same or any other provisions of this Order.

17.     **Governing Law/Forum:** This Order shall be interpreted, construed and governed under the laws of the State of New Hampshire, excluding its choice of law rules, as applied to contracts between New Hampshire corporations entered into and fully performed in New Hampshire. Forum for any dispute shall be any court of competent jurisdiction in Hillsborough County, New Hampshire and Buyer consents to such jurisdiction.

18.     **Entire Agreement:** This **Terms of Sale** document, together with the Proposal and Special Conditions, constitute the final, complete, and exclusive statement of all the terms of agreement between BAE SYSTEMS and Buyer. No prior oral or written agreement shall be a part of, or serve to modify, this Order. Exceptions, confirmations, purchase orders, correspondence, or invoices by Buyer which state additional or different terms shall not alter this Order in any way. Any such differing or additional terms shall be deemed material alterations within the meaning of the Uniform Commercial Code and notice of objection to any such differing or additional terms is hereby given. This Order can only be modified by a written instrument referencing this Order, denoted as an "Amendment", and executed by the parties after the effective date hereof.

13

**BAE002513**