UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SPACEKEY COMPONENTS, INC.<br><br>    Defendant, | )<br>)<br>)<br>)<br>)<br>)    Case No. 10-cv-370-LM<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SPACEKEY COMPONENTS, INC.'S OBJECTION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON PLAINTIFF'S COUNTS III AND IV**

Defendant Space Key Components, Inc. ("Space Key") respectfully submits this
objection to plaintiff BAE Systems Information and Electronics Systems Integration,
Inc.'s ("BAE") motion for summary judgment on Counts III and IV of the Amended
Complaint (the "Second Motion").

**Introduction**

The Court should deny BAE's Second Motion because BAE's claims for breach
of contract and account stated relate to the same RH1280B FPGAs that form the basis for
SpaceKey's breach of warranty counterclaim. These two issues are inextricably
intertwined, and one cannot be decided independently of the other.

This is so because UCC Section 2-717 expressly permits a buyer of
nonconforming goods to "deduct all or any part of the damages resulting from any breach
of the contract from any part of the price still due under the same contract." Because such
a deduction is permitted by the UCC, its exercise is not a breach of the underlying

contract. That is precisely what has occurred in this case. SpaceKey informed BAE (verbally and in writing) that the RH1280Bs failed to conform to BAE's warranties, and that SpaceKey would make no further payments on the contract until an adjustment was made to redress the nonconformities. SpaceKey's counterclaim states these allegations in detail. A breach by BAE of its express warranties would mean that SpaceKey is not in breach of the parties' agreement, and BAE's claims would fail as a matter of law.

Such clashing claims between sellers seeking the purchase price and buyers raising related warranty claims are not uncommon, and courts addressing such circumstances routinely deny sellers' motions for summary judgment. "[W]here a buyer raises § 2–717 and issues of fact remain as to whether the product produced by defendant failed to fulfill the requirements of the contract, summary judgment on the seller's breach of contract claim arising under the same contract must be denied." *Tegrant Alloyd Brands, Inc. v. The Merchant of Tennis, Inc.*, 2011 WL 249469 (N.D. Ill. Jan. 26. 2011). The Court should reach the same result in this case.

Nothing in BAE's "Terms of Sale" changes this result. BAE's reliance on paragraph 6 of the Terms is misplaced, as that paragraph applies only to the terms of payment, requiring, for example, that payments be made "net cash", and that negotiable instruments be "without recourse." Although this paragraph might apply if SpaceKey attempted to stop payment on a check, or to impose conditions on the instrument's negotiability, the parties' current dispute does not involve the terms of payment or the law of negotiable instruments. Accordingly, paragraph 6 is irrelevant.

This remains true even if paragraph 6 *did* apply to topics other than the terms of payment. Although paragraph 6 uses the term "setoff", which does have application

beyond negotiable instruments, SpaceKey is pursuing no such claim or defense in this case. UCC Section 2-717 describes a remedy of recoupment, which is analytically and legally distinct from setoff.

The Court should also deny relief to BAE on its account stated claim. Account stated requires that the parties *agree* on the amount owing. That is manifestly not the case here. SpaceKey has repeatedly informed BAE both of the nonconformities in the RH1280B FPGAs, as well as its intention to withhold payment until the price could be adjusted to account for those nonconformities.

### Concise Statement of Material Facts[1]

1. BAE issued a press release in July 2007 that stated, in relevant part, that it would be reintroducing the RH1280 FPGA that it had manufactured for many years under license from Actel, that the new RH1280B would offer "a dose radiation-hardness in excess of 300K rads (Si), the standard for a majority of applications, and guaranteed latch-up immunity," and that it "will have the same Standard Microcircuit Drawing number (5962F92156) to Qualified Manufacturers List Q and V levels as the originals." SpaceKey Answer to Interrogatory 11 (¶1) (attached as Ex. A to the Declaration of Jonathan Shirley) ("Shirley Decl., Ex. A"); Declaration of Jeffrey C. Spear in Support of SpaceKey Components, Inc.'s Objection to Motion for Summary Judgment ("Spear Aug. 2 Decl."), Ex. A.

2. In August 2007, BAE issued Top Level Drawing ("TLD") 197A806G. Spear Aug. 2 Decl., Ex. B. The 197A806G TLD stated, in relevant part, that the RH1280B would: a) have a minimum Total Dose RAH of 300Krad (Si); a Single Event Latchup ("SEL") of 177; a Single Event Upset (for C Modules) ("SEU1") of 17; a Single Event

---

[1] Hereinafter "CS ¶__."

Upset (for S-Modules) ("SEU2") of 4, and a Single Event Dialectric (antifuse) Rupture

("SEDR") of 60. *Id.* (sheet 14). The TLD also represented that the RH1280B Flight parts

– denominated with a "-24" part number – would have the 5962F92156 SMD inscribed

on the part itself. *Id.* (sheet 16).

3. In addition, the TLD stated at section 4.4.3 that the "pass criteria" for the

radiation testing of the parts "shall be met post 600KRad (Si)." *Id.* (sheet 20). This

criterion is otherwise known as 2X RHACL ("radiation hardness assured capability

level") because it tests at twice the guaranteed rating (here, 300 KRad x 2).

4. These characteristics, while set forth in BAE's own TLD, are drawn from, and

required by, SMD 5962-92156. Spear Aug. 2 Decl., Ex. C (sheets 3 and 6).

5. This specific TLD established the contractual baseline technical performance of

the BAE RH1280B in SpaceKey's sales efforts to its customers. Int. 11 (¶2). It was the

basis of SpaceKey's marketing and sales to Space Key customers, and was specifically

incorporated into the purchase orders submitted by SpaceKey's customers. *Id.*

6. In September 2007, BAE prepared and released to SpaceKey and other

prospective customers and sales agents its "Rad Hard Field Programmable Gate Array

(RH1280B, RH1020B) Product Plan." Spear Aug. 2 Decl., Ex. D. The product plan

confirmed, in relevant part, that BAE was "using the existing, original design graphics

data to re-create the parts to match all timing and performance parameters of the original

products," and that the RH1280B would have a "Guaranteed Total Dose Radiation

Capability" of 300K Rad.

7. In January 2008 Space Key delivered purchase order SKC12508 to BAE. This

purchase order was baselined on BAE's TLD 197A806G, the September 2007 Product

Plan, SMD 5962F9215603, and delivery in Q4 2008, as was SpaceKey's own orders with its customers. Int. 11 (¶4).

8. BAE repeated its warranties regarding the performance specifications of the RH1280B FGPAs in numerous contexts and materials. *See e.g.* Spear Aug. 2 Decl. Exs. G, H, I, L.

9. The first mention BAE ever made to Space Key that the RH1280B Flight parts would not meet the warranted specifications of the original Actel part was in May 2009, when Don Francis verbally informed Mr. Key that the Flight parts would not meet the 300 KRad TID that had been promised. Int. 11 (¶11). Mr. Francis mentioned no other shortcomings, and the issue he did raise was done informally only – no testing or other documentation was provided. *Id.* (¶12).

10. Despite the absence of any technical, compliance, or qualification documentation, SpaceKey took delivery in November and December 2009 and January 2010 of RH1280B products that BAE represented as meeting a minimum TID of 100 KRad, and sent them to its own customers. Int. 11 (¶17). Other than the reduction in TID from 300 to 100 KRad, it was Space Key's expectation and understanding that the other warranties regarding radiation performance – addressing single events – would be met. BAE made no representations to the contrary. *Id.*

11. For shipments in June and August 2009 (100 total pieces), November 2009 (335 pieces), and its first shipment in January 2010 (100 pieces), BAE provided neither a TCI report nor a QML qualification. Int. 11 (¶¶12, 15, 17, 18, 19). BAE did not provide a TCI report for any of these parts until later in January 2010. BAE has never sent (and

SpaceKey has never received) QML certification documentation for any of the RH1280B parts. Int. 5 (Spear Aug. 2 Decl., Ex. K).

12. "QML" is an acronym for "Qualified Manufacturers List." Declaration of William C. Key in Support of Objection to BAE's Motion for Summary Judgment on Plaintiff's Counts III and IV, ¶ 6 ("Key Decl. ¶__"). When a product is "QML Certified," it means that the Defense Logistics Agency, Land and Maritime ("DLA") and Defense Supply Center Columbus ("DSCC") have verified that it complies with MIL-PRF-38535 which sets performance specifications for radiation-hardened monolithic microcircuits (among other types of products). *Id.* If a product is *not* QML certified, it means that it is not backed by the US Government, it is not certified to meet the Standard Microcircuit Drawing (SMD) specification set by the US Government, and it is not approved for use as a standard product on US Government programs. *Id.* Additionally, without DLA/DSCC qualification and performance certification to SMD 5962F9215603QYC, the RH1280B cannot be considered a suitable substitute for the Actel RH1280 FPGA legacy device, as promised/advertised and contracted for by BAE. *Id.*

13. Prospective buyers of military-spec products can verify whether the product they wish to purchase has been QML certified by searching the applicable part number at the DLA website: http://www.landandmaritime.dla.mil/programs/Smcr/. *Id.* at ¶ 7. The applicable part number for the RH1280B is "92156," a number derived from the original DLA SMD for 1280 FPGA products (SMD 5962-92156 - "Microcircuit, Memory, Digital, CMOS, Field Programmable Gate Array, 8000 Gates, Monolithic Silicon"). *Id.*

14. A search of the DLA website reveals that the RH1280B FPGAs manufactured by BAE have not been QML certified. *Id.* at ¶¶ 7-8.

15. Space Key gave notice to BAE that the delivered RH280B FPGAs had the following departures from warranty:  TID < 300KRAD; SEL <  177; SEU(c) < 17; SEU(S) < 4; SEDR < 60. Int. 12, Int. 13 (Spear Aug. 2 Decl. Ex. K).

16. The delivered RH1280B Flight parts did not meet the specifications that BAE warranted. BAE's TLD 197A806K (March 1, 2010) shows that the RH1280B have an SEL of 80 (not 177 as warranted), an SEU1 of 5.7 (not 17 as warranted), an SEU2 of 1.8 (not 4 as warranted), and an SEDR of 21 (not 60 as warranted). Spear Aug. 2 Decl., Ex. J, sheet 16. In addition, the 197A806K TLD confirmed that BAE could no longer comply with SMD5962F92156, because the parts would no longer be marked with that designation. *Id.* (sheet 19). It also confirmed that BAE had abandoned the original 2X RHACL testing requirements. *Id.* (sheet 16) (RH1280B devices "specified at 1X RHACL only, *with no margin*) (emphasis added); *id.* (sheet 23) (Section 4.4.2 no longer sets pass criteria at 2X rated TID).

17. Following Mr. Francis' verbal disclosure in mid-2009 that the RH1280B would not meet the 300KRad TID, Mr. Key did two things. First, he noted the substandard specifications of the RH1280s in a number of discussions with Mr. Francis. Key Decl., ¶ 3. Mr. Key told Mr. Francis repeatedly that SpaceKey considered the RH1280Bs – both at 50 KRad and 100KRad – to be nonconforming, and that it did not intend on making full payment unless and until appropriate product price adjustments were negotiated. *Id.* The second thing Mr. Key did was to revise the SKC12508 purchase order to ensure that the nonconformities in the RH1280B FPGAs were carefully documented. *Id.* at ¶ 5. Thus, in the event of a dispute about the course of events, the

purchase order and its revisions would provide a contemporaneous record of BAE's

failure to meet its express warranties. *Id.*

18. BAE raised concerns about late payment by letter dated April 20, 2010, asking

for a response by May 17, 2010. Declaration of Jeffrey C. Spear in Support of SpaceKey

Component, Inc's Objection to BAE's Motion for Summary Judgment on Plaintiff's

Counts III and IV ("Spear Aug 22 Decl."), Ex. A. On May 14, 2010, SpaceKey's

Virginia counsel sent a response, which stated, in relevant part:

> Finally, your April 20 letter refers to four Purchase Orders (SKC122309,
> SKC1610, SKC12508 (from 15 December 2009), and SKC12508 (from
> 10 December 2009), on which BAE Systems claims payment is due. As
> SpaceKey has previously informed BAE Systems, the Deliverables under
> those Purchase Orders did not meet customer specifications, which
> constitutes a breach for which SpaceKey reserves all rights and remedies
> under the Uniform Commercial Code and other applicable law.

Spear Aug. 22 Decl., Ex. B.

19. BAE Senior Counsel D'Ancona responded to Attorney Faber in a letter dated

June 4, 2010, making specific reference to "SpaceKey's contention that it may defer

payment on the overdue invoices because the goods did not meeting [*sic*] end-user

specifications." Spear Aug. 22 Decl., Ex. C.

## Argument

**I.    BAE's Breach of Contract Arguments Fail Because the UCC Expressly
Permits for Recoupment and Deduction of Warranty Damages Arising from
the Same Contract.**

BAE's primary argument in the Second Motion is that SpaceKey has breached its

agreement to pay for the RH1280B FPGAs. BAE contends that a "breach of contract

occurs when a party fails without legal excuse, to perform any promise that forms the

whole or part of a contract." Memorandum of Law in Support of Plaintiff's Motion for

Summary Judgment on Plaintiff's Counts III and IV at 9 ("Second SJ Memo"). While that is a correct statement of the law, it does not help BAE here, because SpaceKey *does* have a legal excuse for withholding payment.

The UCC allows a buyer of nonconforming goods to both accept those goods and to seek recovery for the nonconformance. Significantly, the UCC expressly provides that such a claim can be used in two ways: as a "cross-claim for damages," and "also by way of recoupment in diminution or extinction of the price." RSA 382-A:2-607, Official Comment 6. *See also*, RSA 382-A:2-714, Comment 1 ("The section on deduction of damages from price provides an additional remedy for a buyer who still owes part of the purchase price, and frequently the two remedies will be available concurrently").

The recoupment remedy is set forth in UCC § 2-717. That section provides that "[t]he buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." RSA 382-A:2-717. As the comment states, "no formality of notice is required and any language which reasonably indicates the buyer's reason for holding up his payment is sufficient." Here, SpaceKey repeatedly informed BAE about the nonconformance. CS ¶¶ 15, 17. SpaceKey likewise repeatedly informed BAE that the nonconformance was the reason for its decision not to pay the balance of the invoice. *Id.* Mr. Key informed Mr. Francis at BAE of this state of affairs on several occasions during the first quarter of 2010. *Id.*

These notifications were also reiterated in writing. BAE raised its concerns about late payment by letter dated April 20, 2010, asking for a response by May 17, 2010. CS ¶

18. On May 14, 2010, SpaceKey's Virginia counsel sent a response, which stated, in relevant part:

> Finally, your April 20 letter refers to four Purchase Orders (SKC122309, SKC1610, SKC12508 (from 15 December 2009), and SKC12508 (from 10 December 2009), on which BAE Systems claims payment is due. As SpaceKey has previously informed BAE Systems, the Deliverables under those Purchase Orders did not meet customer specifications, which constitutes a breach for which SpaceKey reserves all rights and remedies under the Uniform Commercial Code and other applicable law.

*Id*.

Certainly by June 4, 2010, when BAE Senior Counsel D'Ancona responded to Attorney Faber, BAE was well aware of SpaceKey's intent to withhold payment on the critical invoices. *Id.* at ¶ 19 (referring to "SpaceKey's contention that it may defer payment on the overdue invoices because the goods did not meeting [*sic*] end-user specifications").

Under the UCC, a buyer of goods does not breach a contract for the sale of goods when it deducts damages that arise from the underlying contract. *Purofied Down Products Corp. v. Royal Down Products, Inc.,* 87 F.R.D. 685, 690 (W.D. Mich. 1980) (Court denied summary judgment on seller's claim for payment because if the buyer properly deducted damages under 2-717, "then defendant cannot be said to have breached the contract, and plaintiff cannot recover the purchase price allegedly due. Acceptance of seller's product, and refusal to pay, alone do not necessarily constitute breach."); *see also Tegrant Alloyd Brands, Inc. v. The Merchant of Tennis, Inc.*, 2011 WL 249469 (N.D. Ill. Jan. 26. 2011) ("if a buyer has properly invoked its rights under § 2–717, its failure to pay the amount of its actual damages for non-conformance is not a breach of contract.").

As the New York Court of Appeals has stated, "[i]t follows, therefore, that a buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement." *Created Gemstones, Inc. v. Union Carbide Corp.*, 47 N.Y.2d 250, 255 (N.Y. 1979).

BAE has already challenged the validity of SpaceKey's breach of warranty counterclaims. Unless and until it prevails on that argument, BAE cannot show that SpaceKey is in breach. A similar issue arose in *Rotorex Co., Inc. v. Kingsbury Corp.*, 42 F.Supp.2d 563, (D.Md. 1999). There, the Court denied Kingsbury's motion for summary judgment against the plaintiff's breach of warranty claims because the underlying facts were in dispute. *Id.* at 577. The Court also denied Kingsbury's motion for summary judgment on its own claim for the contract price. It stated:

> In this case, Rotorex has "interposed" a claim against Kingsbury for breach of the underlying sales agreement. The validity of that interposed claim depends on the resolution of the underlying contract dispute. As discussed herein, disputed questions of material fact exist as to the breach of contract issue in this case. Consequently, proper disposition of Count I of the counterclaim must await resolution of this factual question.

*Id.* at 578. *See also*, *Created Gemstones*, 47 N.Y.2d at 255-56 (summary judgment in favor of seller reversed because "if, after trial, it is determined that [the seller] did in fact breach, then [buyer's] liability on the counterclaims would be extinguished to the extent that it was damaged by the breach"); *Tegrant*, at *8 ("where a buyer raises § 2–717 and issues of fact remain as to whether the product produced by defendant failed to fulfill the requirements of the contract, summary judgment on the seller's breach of contract claim arising under the same contract must be denied."); *Pacific Western Resin Co. v. Condux Pipe Systems, Inc.*, 771 F.Supp. 313, 318 (D.Or. 1991) (denying summary judgment

motion for price of goods sold because of 2-717 dispute); *PC COM, Inc. v. Proteon, Inc.,* 906 F. Supp. 894, 903-04 (S.D.N.Y. 1995) (same result, applying Massachusetts law).

SpaceKey has not paid the full price charged by BAE for the RH1280B FPGAs because it has been damaged by the failure of those products to conform to BAE's express warranties. SpaceKey communicated its intent to withhold payment on the RH1280B FPGAs until the price could be adjusted to account for the nonconformities. Because SpaceKey has properly invoked its rights under Section 2-717 of the UCC, BAE cannot show that SpaceKey is in breach of the parties' contract and is not entitled to summary judgment.[2] The Court should deny the Second Motion for this reason.

There is one final issue to mention. Section 2-717 requires that "the breach involved . . . be of the same contract under which the price in question is claimed to have been earned." RSA 382-A:2-717, Official Comment 2. This means that Section 2-717 applies only to the RH1280B invoices, as SpaceKey's breach of warranty claim pertains to those products. SpaceKey recognizes that it cannot seek recoupment under 2-717 for the two other invoices BAE mentions in its motion – SKC122309 and SKC1610 –which total $51,757, and it does not seek to do so here.

## II.    The Court Should Deny BAE's Motion Because BAE has not Delivered the Goods Ordered by SpaceKey.

BAE's motion is expressly premised on the assertion that it has delivered exactly what SpaceKey ordered, and therefore SpaceKey must pay the invoice price. Second Motion at ¶ 2 ("BAE Systems fully performed its obligation to deliver the goods ordered by SpaceKey"). BAE is mistaken.

---

[2] BAE acknowledges the interdependence of its two motions when it expressly incorporates the arguments of the First SJ Memo in contending that SpaceKey's counterclaims "cannot prevail." Second SJ Memo at 10.

The Terms of Sale expressly incorporate and defer to the terms of the "Order," which is defined as "the agreement between the parties to which these terms pertain." Declaration of David Rea in Support of Plaintiffs' Motion for Summary Judgment on Plaintiff's Counts III and IV ("Rea July 21 Decl."), Ex. A. *See also* Terms of Sale recitals (defining "Proposal" as BAE's "offer letter, quotation or proposal"), and ¶ 2 ("BAE SYSTEMS will provide the required hardware articles . . . more fully described in the Proposal or *specifications made part of the Order.*") (emphasis added).

Here, the "Order" was for RH1280Bs that had the following specifications: a TID of 300 KRad, SEL of 177, SEU (C Mod) of 17, an SEU (S Mod) of 4, and an SEDR of 60. *See* RSA 382-A:2-313 (promises, affirmations, and descriptions of goods become part of the basis of the bargain, and thus part of the parties' agreement). The parties' agreement also expressly contemplated that the RH1280B FPGAs would conform to SMD 5962F9215603, and that the parts would be QML certified. CS ¶ 1.

BAE has *not* satisfied its obligations to deliver the goods that the parties' agreement requires. SpaceKey has explained at length why this is so in its objection to the First Motion. But one element bears emphasis here – the requirement that the RH1280B FPGAs be QML certified.[3]

As Mr. Key explains in his declaration, QML certification means that a part has been verified by the Defense Logistics Agency, Land and Maritime ("DLA") and Defense Supply Center Columbus ("DSCC") as complying with MIL-PRF-38535 (which sets performance specifications for radiation-hardened monolithic microcircuits), that it

---

[3] BAE's invoices confirm the centrality of QML certification to the parties' deal. *See* Declaration of David Rea in Support of Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims at Counts Three and Four ("Rea July 1 Decl."), Ex. C (Dec. 3, 2009 and Dec. 16, 2009 BAE invoices stating that parts will be "QML").

meets the Standard Microcircuit Drawing (SMD) specification set by the US

Government, and that it is approved for use as a standard product on US Government

programs. CS ¶ 12. In this particular case, the absence of DLA/DSCC qualification and

performance certification to SMD 5962F9215603QYC, means that the RH1280B cannot

be considered a suitable substitute for the Actel RH1280 FPGA legacy device, as BAE

warranted.

The DLA website lists parts that have received QML certification. *Id.* ¶ 13. As of

August 17, 2011, that website confirms that the RH1280B has not received QML

certification. *Id.* ¶ 14.

Contrary to BAE's claims, it has not delivered the products that SpaceKey

ordered. Its own invoices confirm this fact. The Court should accordingly deny BAE's

Second Motion.

### III.  Paragraph 6 of the Terms of Sale Addresses Payment Terms and is Irrelevant to the Parties' Warranty Dispute.

BAE asserts that language in paragraph 6 of the Terms of Sale pertaining to the

terms of payment supports its requests for relief. Second SJ Memo at 10. BAE

misunderstands the language and import of the Terms of Sale.

Paragraph 6 is entitled "Payment." Rea July 21 Decl., Ex. A. By its plain terms, it

describes *how* payments should be made – what it refers to as "terms of payment." Thus,

payments are to be made in "U.S. Dollars, net cash, Nashua, New Hampshire." *Id.* The

sentence that BAE refers to in its memo provides that "Payments are unconditional and

shall be made as specified in the Order, without recourse, set off, or discount." *Id.* This

provision is likewise focused on the way in which payments are to be made. In doing so,

it speaks the language of negotiable instruments.

Thus, the provision that payments, when made, be "unconditional" is intended to override the contrary presumption under the UCC. *See* RSA § 382-A:2-511(3) ("subject to the provisions of this chapter on the effect of an instrument on an obligation (Section 3-310), *payment by check is conditional* and is defeated as between the parties by dishonor of the check on due presentment.") (emphasis added).

The term "without recourse" is likewise a staple of the law governing negotiable instruments. By specifying that its customers' payments be made "without recourse" BAE intends to eliminate or reduce its liability as an endorser upon receipt and endorsement of a customer's check. *See, e.g.*, RSA 328-A:3-415. The language addressing setoffs is to similar effect – it is intended to eliminate a particular defense to payment of the *instrument*. *See e.g.*, *Community Bank v. Ell*, 278 Or. 417, 419 (1977) (defendant's stop payment order on checks was justified, because setoff was a defense under UCC Section 3-306 to payment on the instruments).

Although not defined, the term "discount" doubtless refers to the common commercial practice of granting discounts for prompt or early payment. *See e.g. Autry Petroleum Co. v. BP Products North America, Inc.*, 334 Fed. Appx. 982, 984 (11th Cir. 2009) (although contract "included no prompt-pay discount," dispute existed as to "whether the one percent prompt-pay discount term . . . had been integrated into the Contract by the course of dealing or course of performance"). As between merchants, the UCC incorporates and takes account of trade usage. RSA 382-A:1-205. Paragraph 6 of the Terms is intended to negate any such infiltration of trade usage regarding discounts.

Paragraph 6 thus applies by its plain language to the terms of payments once they are made. It has no application to the facts of this case.

15

Although the concept of "setoff" does have an application outside of negotiable instrument law, it would not help BAE here because SpaceKey is not making a "setoff." It is making a recoupment counterclaim under Section 2-717. The two principles are distinct.

> Recoupment and set-off are distinguishable from each other. Recoupment differs from set-off in that any claim or demand the defendant may have against the plaintiff may be used as a set-off, while a claim is not a subject for recoupment unless it grows out of the very same transaction which furnishes the plaintiff's cause of action. Thus, unlike set-off, recoupment involves the netting out of the debt arising from a single transaction, and does not involve the concept of mutuality of obligations.

80 C.J.S. Set-Off and Counterclaims § 12.

This Court recognized the difference in *Lago & Sons Dairy, Inc. v. H.P. Hood, Inc.*, 892 F.Supp. 325, 336-37 (D.N.H. 1995), where it ruled that "the defense asserted by Lago is more akin to a recoupment than a set-off," because the "respective damages to both parties arise out of the same transaction and affect each party's legal rights and liabilities on the contract." *See also Zurback Steel Corp. v. Edgcomb*, 120 N.H. 42, 44 (N.H. 1980) ("[t]he defendant's claim arises out of the same transaction giving rise to the plaintiff's suit, and is therefore, in the nature of recoupment"); *ITV Direct, Inc. v. Healthy Solutions, LLC*, 445 F.3d 66, 71 (1st Cir. 2006) (distinguishing between recoupment, which "allows the reduction by defendant of an amount otherwise due the plaintiff based on defendant's own claim against plaintiff, whether liquidated or unliquidated, growing out of the same contract," and setoff, which "allows the reduction for cross debts due to unrelated transactions, but the debt used as the setoff must be liquidated or easily ascertainable in amount").

The Court also recognized that "[u]nder New Hampshire law, recoupment may be used 'defensively to defeat or diminish plaintiff's recovery ... [or] affirmatively to obtain full relief, a complete determination of all controversies arising out of matters alleged in the original petition, and to allow the defendant affirmative relief against the plaintiff.'" *Lago & Sons Dairy*, 892 F.Supp. at 337 (*quoting Zurback Steel*, 120 N.H. at 44).

Paragraph 6 of the Terms of Sale does not aid BAE's arguments because it is limited by its terms to establishing the terms of payments when such payments are made. But even if it could be construed as having wider application, it would provide no support for BAE's motion, because SpaceKey's claims under 2-717 are in the nature of recoupment, not setoff. Accordingly, the Court should deny BAE's Second Motion.

**IV.   The Court Should Deny BAE's Motion for Summary Judgment on its Account Stated Claim, Because There Has Never Been an Agreement About the Amounts Owing for the Nonconforming RH1280B FPGAs.**

A claim for account stated requires that the parties *agree* on the correctness of the amounts being charged. *White v. Schraft*, 94 N.H. 467, 469 (1948). If such agreement is lacking, the claim fails as a matter of law.

> An objection, protest, or demand for an explanation generally prevents the establishment of an account stated.
>
> The essential element of assent to an account stated is not present when a proper objection to the account is made by the party to whom the account is submitted, such as where the debtor returns the accounts rendered, consistently rejects demands for payment, sends a letter rejecting the claim, disagrees with invoices, or requires an explanation of some items. Furthermore, assent to an account rendered is not shown, and an account stated is not created, where the party receiving the account disputes it, or protests against it, or has continually expressed dissatisfaction with the underlying services performed.

1A C.J.S. Account Stated § 24.

This is particularly true where the account stated claim is the companion to a claim for breach of contract. *See, e.g. GSGSB, Inc. v. New York Yankees,* 862 F.Supp. 1160, 1176 (S.D.N.Y. 1994) (where "account stated claim is nothing more than an attempt by [plaintiff] to collect under an otherwise disputed contract," and "this underlying agreement is in dispute, the account stated claim must fail as a matter of law.")

BAE's account stated claim fails for precisely these reasons. There is no agreement between the parties as to the appropriate price for the RH1280B FPGAs. To the contrary, the parties are actively disputing that fact, as well as whether BAE has satisfied its express warranties. The cases BAE cites in its brief are not to the contrary. *See, e.g., Coleman Co, Inc. v. Cargil Int'l Corp.*, 731 So.2d 2, 3-4 (Fl. Dist. Ct. App. 3d 1998) (unlike the present case, the buyer, Cargil, never contested the purchase price or the invoices).

## Conclusion

For the foregoing reasons, as well as the reasons discussed in SpaceKey's objection to the First Motion, the Court should deny BAE's Second Motion for summary judgment.

Respectfully submitted,

Space Key Components, Inc.

By its Attorneys,

ORR & RENO, P.A.
One Eagle Square
P.O. Box 3550
Concord, NH  03302-3550
603-224-2381

Date:   August 23, 2011                    /s/ Jeffrey C. Spear_____
                                           Martha Van Oot (NHB #963)
                                           mvanoot@orr-reno.com
                                           Jeffrey C. Spear (NHB #14938)
                                           jspear@orr-reno.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August 2011, a copy of this Objection has been sent via the Court's ECF system to counsel for BAE Systems.


/s/ Jeffrey C. Spear_____