UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION INC.<br><br>                Plaintiff,<br><br>v.<br><br>SPACEKEY COMPONENTS, INC.<br><br>                Defendant. | Civil Action No.  10-CV-370-LM |

**REPLY TO OBJECTION TO MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS AT COUNTS THREE AND FOUR**

Plaintiff BAE Systems Information and Electronics Systems Integration Inc. ("BAE Systems"), by its attorneys, Devine Millimet & Branch, Professional Association, and pursuant to Local Civil Rule 7.1(e)(1), respectfully submits this Reply to the Objection to Motion for Summary Judgment on Defendant's Counterclaims Three and Four (Document 31).

**I.   Preliminary Statement**

BAE Systems moved for summary judgment on SpaceKey's breach of warranty and misrepresentation counterclaims for two reasons.  First, irrespective of whether the field programmable gate array ("FPGA") semiconductors met certain specifications, SpaceKey's contractual remedies are limited to the return of the FPGAs in exchange for repair, replacement or a refund of the purchase price (to the extent already paid).  SpaceKey elected none of these remedies and instead resold the parts to its customers.  Second, SpaceKey cannot establish that it has incurred damages.  Having already resold all of the FPGAs for the full contract prices that it negotiated with its customers months before accepting delivery from BAE Systems, SpaceKey

can produce no evidence that it was harmed in any way by the alleged nonconformance in specifications.

In its objection, SpaceKey fails to produce evidence of a dispute as to any of the material facts presented by BAE Systems. SpaceKey does not dispute that it accepted the written terms of sale when it purchased the FPGAs. SpaceKey does not dispute that it and all of its customers knew before accepting delivery from BAE Systems that the FPGAs would not meet the 300 KRAD radiation tolerance, and, in fact, that they all knew the ultimate KRAD tolerance of the delivered FPGAs before accepting delivery. SpaceKey does not dispute that it resold all of the FPGAs to its customers for the same prices that it negotiated when the radiation tolerance issues were unknown. SpaceKey fails to proffer a scintilla of evidence on the central issue raised on summary judgment: that it suffered damages or that the FPGAs possessed some value at the time of BAE Systems' delivery that was lower than what SpaceKey agreed to pay BAE Systems.

Instead, SpaceKey presses a series of legal arguments in an attempt to backpedal from the express contractual terms that govern the parties' sale transaction and that limit SpaceKey's remedies in this action. For the reasons set forth below, none of SpaceKey's legal arguments has merit and BAE Systems is entitled to summary judgment on the counterclaims at Counts Three and Four.

**II.     The Parties' Integration Clause Limits The Scope Of BAE Systems' Warranty Obligations**

SpaceKey first argues that statements BAE Systems made prior to the parties' final written agreement for the sale of the FPGAs created broad express warranties as to the performance of the FPGAs that fall outside the terms of sale and thus permit SpaceKey to seek remedies available under the UCC. The terms of sale SpaceKey accepted, however, contain an

express integration clause. For this reason, SpaceKey's effort to import prior statements into the contract as warranties fails.

Paragraph 18 of the terms of sale provides, among other things, that "no prior oral or written agreement shall be part of or serve to modify this Order. Exceptions, confirmations, purchase orders, correspondence or invoices by Buyer which state additional or different terms shall not alter this Order in any way." (Rea Decl. at Ex. A ¶ 18.) Because the parties settled on a final written agreement for the sale of the FPGAs, SpaceKey may not now introduce prior statements of BAE Systems to establish that warranty obligations exist beyond those expressed in the writing.[1] RSA 382-A:2-202 (West 2011)(setting forth parol evidence and extrinsic evidence rules applicable under NH UCC); *see Globe Metallurgical, Inc. v. Hewlett-Packard Co.*, 953 F. Supp. 876 (S.D. Ohio 1996), *judgment aff'd*, 99 F.3d 1139 (6th Cir. 1996) (when a contract is completely integrated, extrinsic evidence may not be admitted to contradict or to explain or supplement its terms); *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024 (7th Cir. 1993) (written contract that contained an integration clause excluded an alleged oral warranty that was made before the sale but was not included in the written contract).

For this reason, the decisional law SpaceKey advances in support of its express warranty argument – *Community Television Services, Inc. v. Dresser Industries, Inc.*, 586 F.2d 637 (8th Cir. 1978) – is off point. That decision hinged on the court's finding that a statement of the seller made years before the sale was a "basis of the bargain" and thus created a broad express warranty obligation that fell outside the terms of the parties' written agreement (which

---

[1] This applies as well to SpaceKey's assertions that BAE Systems failed to provide quality conformance reports for shipments in June and August 2009 or the first shipment in January 2010. (Obj. at 9.) This was never a requirement and SpaceKey's own purchase order indicates that quality conformance reporting was not due to be provided until after the parts were delivered. (Rea Decl. at Ex. G., Note 11.) The QCI report was delivered in March 2010. (*Id.* at Ex. C, Invoice 107848.) Moreover, nowhere does the parties' final written agreement identify a requirement to delivery QML certification documentation. (Obj. at 9.)

apparently contained no integration clause). *Id*. at 642.  The court observed, however, that had the prior statement not been introduced into evidence, the court would have been inclined to find that the seller met the obligations set forth in the parties' written agreement.  *Id*.  In other words, had the evidence been excluded due to an integration clause like the one in this action, the court would have confined the seller's obligations – and by implication the buyer's remedies – to the terms expressed in the written agreement.  *See id*.

This is precisely the outcome required here:  the parties' final written agreement, which includes the terms of sale, expresses the entirety of BAE Systems' obligations and the entirety of SpaceKey's remedies.  The integration clause therefore triggers the parol evidence rule as set forth under RSA 382-A:2-202.  Consequently, SpaceKey is precluded from pursuing theories that earlier statements about BAE Systems' intentions for the FPGAs (which SpaceKey knew at the time of the parties' final written agreement were no longer accurate) were somehow woven into the "basis of the bargain" between the parties and create additional, broad warranties beyond those contained in the terms of sale.[2]

### III.    SpaceKey's Remedies Are Limited To Those Available In The Terms Of Sale

SpaceKey next presses a two-part argument that (i) because its warranty claim is for nonconforming parts and not defective parts, the contractual remedies set forth in the terms of sale do not apply and, in any event, (ii) such contractual remedies "fail their essential purpose" because they deny SpaceKey the benefit of its bargain.  SpaceKey again overlooks a critical provision of the terms of sale and also misreads the governing law of New Hampshire.

---

[2] It is also undisputed that SpaceKey knew before accepting delivery that the FPGAs would not meet the 300 KRAD radiation tolerance specification.  (Obj. at 8.)  As a matter of law, this knowledge bars SpaceKey from revoking acceptance of the FPGAs on that basis.  RSA 382-A:2-607(2)(goods accepted and made with knowledge of nonconformance cannot be revoked).

Whether SpaceKey's warranty claim is for "nonconforming" parts as opposed to "defective" parts is irrelevant because the terms of sale address both conditions. Paragraph 8 plainly states that the right to return the FPGAs within one year of the purchase for repair, replacement or a refund of the purchase price constitutes SpaceKey's "sole remedy with respect to any defect or *nonconformance* in the deliverables provided by BAE Systems." (Rea Decl. at Ex. A ¶ 8(e)) (emphasis added.) The terms of sale, in other words, make clear that return for repair, replacement or refund comprise SpaceKey's sole warranty remedy, whether based on defect or nonconformity. *Id*. SpaceKey never availed itself of this remedy because it had no reason to do so: SpaceKey resold the FPGAs pursuant to advance contracts it entered into with its customers, none of whom have returned the FPGAs, all at a considerable profit to SpaceKey. (Plf.'s Memo at 10.)

SpaceKey advances a strained interpretation of the governing New Hampshire decisional law enforcing such contractual remedy limitations as a legal basis for its position that the warranties somehow failed their essential purposes. In *Xerox v. Hayes*, 124 N.H. 610 (1984), the New Hampshire Supreme Court specifically rejected the leassee's contention that the two contractual remedies available to it under a printer lease failed their essential purpose, even though one of the two was not available. *Id* at 619. The Court reasoned that just because one of the remedies was unavailable (replacement) and the other remedy (refund) denied the leassee the "benefit of its bargain," such a contractual provision was still permissible and still enforceable:

> Section 2-719 of the Code demonstrates that there are permissible limitations as to remedies. Section 2719(1)(a) provides that damages may be limited 'as by limiting the buyer's remedies to return of the goods and repayment of the price.' It is obvious that this remedy deprives the buyer of the benefit of its bargain . . . but is nonetheless deemed permissible.

*Id*. (quoting *Dow Corning Corporation v. Capital Aviation, Inc.*, 411 F2d 622 (7th Cir 1969) (internal quotations omitted).

Creative as SpaceKey's characterization of *Xerox* may be, the holding has nothing to do with consequential damages. To the contrary, and as SpaceKey itself observes, contractual limitations on remedies and contractual limitations on consequential damages are entirely distinct concepts and are treated separately under the New Hampshire Uniform Commercial Code. RSA 382-A:2-719. The two forms of limitation clauses are even held to different standards of enforceability. *Cf*. 382-A:2-719(2) (remedy limitation cannot fail its essential purpose) to RSA 382-A:2-719(3) (consequential damage limitation cannot be unconscionable).

SpaceKey also erroneously characterizes *Hydraform Products Corp. v. American Steel & Aluminum Corp.*, 127 N.H. 187 (1985). That case involved a seller who honored the buyer's demand for contractual remedies and elected to replace the nonconforming goods, but then failed to seasonably replace the goods when time was of the essence. *Id*. at 191-92. In the context of those specific facts, the New Hampshire Supreme Court held that the contractual remedy of replacement failed its essential purpose – a logical outcome since time was of the essence, and replacement was not timely. *Id*. at 197. *Hydraform* does not overrule *Xerox* (to the contrary, it cites *Xerox* as governing authority) and it has no correlation to the facts of this case. No remedy available to SpaceKey through the parties' agreement has failed because SpaceKey apparently saw no need to pursue them. To the extent one of the panoply of remedies is not available, *Xerox* confirms that does not result in the failure of all the remedies' essential purpose.

The terms of sale plainly govern SpaceKey's remedies for nonconforming parts and SpaceKey fails to present any New Hampshire authority to support its conclusory position that such remedies fail their essential purpose.

IV.     **SpaceKey Fails To Establish Evidence of Warranty Damages**

Finally, SpaceKey insists that it is entitled to the warranty remedies available under RSA 382-A:2-714. SpaceKey's analysis fails both because this is not an action to which the general, statutory warranty damages apply, and also because, even if they did, SpaceKey has failed to carry its burden to proffer evidence that create even a question of fact that it has suffered such damages.

SpaceKey insists it may collect the difference between the value of what was promised and what was delivered no matter what the circumstance, and even though it resold the parts at a profit. SpaceKey paints with too broad a brush, however, as confirmed by the case cited and discussed in BAE Systems' opening memorandum, *Ed S. Michelson, Inc. v. Nebraska Tire & Rubber Co.*, 63 F.2d 597 (8th Cir. 1933).

*Michelson* concerns tires which allegedly fell short of the promised specifications, but the resale of which had been locked in by pre-existing contracts between the buyer and third parties. *Id*. at 598-99. The Court acknowledged the general rule that the measure of damages in a breach of warranty case, even where the goods are resold, "is the difference between the actual value of the property at the time of the sale and what its value would have been if it had conformed to the warranty." *Id. at* 599 (quotation omitted). SpaceKey would like the analysis to end there. *Michelson*, however, went on to explain that this general statement of law does not apply in situations such as in this action, when the goods are not purchased for resale on the open market but rather

> for the sole and only purpose of fulfilling a contract which [the buyer] had theretofore made with [a third party]. . . . [T]he maximum price which [the buyer] could in any event receive for the tires was fixed by its contract with the [third party]. Hence, it could not make any additional profit by reason of any supposed superior quality of the product . . . . [The buyer] had precluded any such possibility by its contract.

7

*Id*. at 600. The *Michelson* court concluded that a buyer who purchases to satisfy its prior contracts with third parties would reap an impermissible windfall in the form of a second profit on a transaction where only one profit was contemplated. *Id*. at 601. *Michelson* therefore states a corollary to the general rule on warranty damages that directly bears on this case: where goods are purchased by a buyer for resale to fill a preexisting contract, the damages for breach of warranty are liquidated by the contract for resale. To the extent the buyer resells the goods for the price contemplated by the preexisting contract, it suffers no damages.

SpaceKey, like the buyer in *Michelson*, purchased the FPGAs from BAE Systems solely for resale to customers with whom it had prearranged contracts. SpaceKey, therefore, like the buyer in *Michelson,* can claim only the difference between the price it contracted to resell the FPGAs and the actual price at which it resold them. It is undisputed that SpaceKey suffered no discount on nor cancellation of the resale of the FPGAs to its customers, so under no circumstances can SpaceKey claim warranty damages.

To a large extent, the debate as to whether SpaceKey may seek windfall warranty damages is academic anyway since SpaceKey has entirely failed to carry its burden on summary judgment to show that the FPGAs it accepted actually possessed a market value lower than the value as warranted by BAE Systems. A buyer claiming warranty damages for the difference in value of the goods as warranted and the market value of the goods at the time of delivery carries the burden to proffer evidence of those values to defeat summary judgment. *Valenti v. Mitsubishi Motor Sales of America*, 773 N.E.2d 1199 (Ill. App. 2002). A buyer's failure to proffer competent evidence as to market value of the disputed goods entitles the seller to judgment on the buyer's warranty claim. *Id*.; *see also Rose v. Mercedes-Benz U.S.A., LLC*, 882 N.E.2d 112 (Ill. App. 2007).

In *Valenti*, the buyer claimed that the car she purchased from the dealer was defective and that she was entitled to warranty damages calculated by the difference in car's value as warranted and the market value of the car as delivered. 773 N.E. 2d at 1202. The Illinois Court of Appeal upheld summary judgment for the dealer because the only evidence available in the record established that the buyer purchased the car for an agreed price, drove it for two and a half years, and then resold it for fair market value despite the alleged defects. *Id*. at 1203. The Court observed that damages is a necessary element of a breach of warranty claim and that it was the buyer's burden to establish the correct measure of damages at summary judgment. *Id*. Having failed to produce evidence beyond the record facts available, the Court reasoned, the plaintiff did not meet her burden and judgment for the defendant was proper. *Id*.

SpaceKey similarly offers no evidence at summary judgment beyond the record facts set forth by BAE Systems, i.e., that SpaceKey purchased the FPGAs for an agreed price and then resold the FPGAs to its customers for an agreed price (and considerable profit). This record evidence provides no basis for a fact finder to reasonably conclude that any difference exists in the value of the FPGAs as warranted and the value as delivered. *See Long v. Quality Mobile Home Brokers, Inc.*, 248 S.E.2d 311, 312 (S.C. 1978) (noting that "cash price paid for goods is *prima facie* the value of the goods as warranted"); *HCI Chemicals (USA), Inc. v. Henkel KGaA*, 966 F.2d 1018, 1024 (5th Cir. 1992) (noting resale price establishes market value of goods as delivered).

The most SpaceKey offers is promises that it will adduce evidence at trial on this issue. (Def's. Obj. at 25) ("Here, SpaceKey intends to show that there is a very significant difference in value between the FPGAs that were promised and warranted and those that were actually

9

delivered.").[3] But Rule 56, and First Circuit decisional law construing Rule 56, unequivocally impose on the non-moving party the obligation to oppose summary judgment with evidence that would be admissible at trial. *See Grassia v. Piers*, 2011 WL 2507714, at *2 (1st Cir. 2011). While it is true SpaceKey offers its own speculation as to the impact that the nonconformities will have on the performance of its customers' satellites (Spear Decl., Ex. K at Int. 15), the testimony lacks any foundation as to William Key's qualifications to opine on such matters for it to be admissible. The testimony is also irrelevant since it concerns the damages SpaceKey's customers will purportedly suffer to their satellites, not the damages SpaceKey has incurred. Moreover, even were these speculations admissible, SpaceKey fails to identify the lower market value that results from the alleged nonconformities. *See Rose v. Mercedes-Benz U.S.A., LLC*, 882 N.E.2d 112 (Ill. App. 2007) (buyer failed to provide adequate foundation for admission of her lay opinion testimony as to value of the car at the time of purchase).

In short, nothing in the record even hints that a market value exists for the FPGAs that is lower than the price at which SpaceKey resold them. If, for example, SpaceKey had to discount the FPGAs to its customers, SpaceKey might be able to offer that evidence to defeat summary judgment and also maintain its promises of future, corroborating evidence. *Michelson*, 63 F.2d at 601. Instead, the record contains nothing to support even a dispute of fact on the market value of the FPGAs to avoid summary judgment.

---

[3] SpaceKey's promises of future evidence are no different, and no more competent to defeat summary judgment than promises BAE Systems might make of future evidence: should SpaceKey's claims survive summary judgment, BAE Systems will show at trial that no actual difference exists in performance between the RH1280B FPGAs sold to SpaceKey and the RH1280 FPGAs produced under Actel Corp as it pertains to the single event metrics that SpaceKey has cited. (Def.'s Obj. at 9.) Thus, but for radiation tolerance, the new FPGAs perform the same as the old FPGAs and, for reasons that will be explained, it is only the testing results for the single event specifications that are reported differently. BAE Systems, however, does not base its summary judgment motion on promises of future evidence; SpaceKey should not be allowed to oppose summary judgment with such promises.

**V.      Conclusion**

For the foregoing reasons, and for all the reasons set forth its opening memorandum, BAE Systems is entitled to summary judgment in its favor on SpaceKey's counterclaims as Counts Three and Four.

Respectfully submitted,

**BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION INC.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH, P.A.**

Dated: August 26, 2011            /s/ Jonathan M. Shirley
                                  Daniel E. Will, Esq. (Bar No. 12176)
                                  Jonathan M. Shirley, Esq. (Bar No. 16494)
                                  Joshua M. Wyatt, Esq. (Bar No. 18603)
                                  111 Amherst Street
                                  Manchester, NH 03101
                                  (603) 669-1000
                                  dwill@devinemillimet.com
                                  jshirley@devinemillimet.com
                                  jwyatt@devinemillimet.com

**CERTIFICATE OF SERVICE**

I, Jonathan M. Shirley, hereby certify that a copy of the foregoing Reply to Objection to Motion for Summary Judgment on Defendant's Counterclaims Three and Four was this day served via the Court's Electronic Filing System on counsel for the defendant.

                                  /s/ Jonathan M. Shirley
                                  Jonathan M. Shirley