UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION INC.<br><br>Plaintiff,<br><br>v.<br><br>SPACEKEY COMPONENTS, INC.<br><br>Defendant. | Civil Action No. 10-CV-370-LM |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COUNTS III AND IV**

NOW COMES plaintiff BAE Systems Information and Electronics Systems Integration Inc. ("BAE Systems"), by its attorneys, Devine Millimet & Branch, Professional Association, and pursuant to Local Civil Rule 7.1(e)(1), respectfully submits this Reply in support of Plaintiff's Motion for Summary Judgment on Plaintiff's Counts III and IV (Document 36).

**A. Preliminary Statement**

BAE Systems moves for summary judgment on its claims for breach of contract (Count III) and account stated (Count IV) because it is undisputed that SpaceKey took delivery of parts under purchase orders SKC12508, SKC1610 and SKC122309 but has failed and refused to pay BAE Systems the amount due and owing. In particular, SpaceKey took delivery of semiconductors (called "FPGAs") worth $1.8 million dollars under purchase order SKC12508 and resold them at a handsome profit to its own customers pursuant to pre-existing contracts. Having accepted all of these parts – including the FPGAs, which it admits to having resold – SpaceKey must now pay for them.

1

For its part, SpaceKey only disputes its obligation under SKC12508 (and not the other two purchase orders) and it continues to press rights and remedies under the New Hampshire Uniform Commercial Code that it relinquished long ago when it accepted the terms of sale to purchase the FPGAs. SpaceKey cannot avail itself of the recoupment remedy that RSA 382-A:2-717 provides because SpaceKey agreed under the terms of sale that its remedy was limited to the return of the FPGAs for repair, replacement or refund of the purchase price (to the extent paid). SpaceKey also agreed that it would make payment to BAE Systems for the FPGAs unconditionally and "without recourse, set off, or discount," meaning that SpaceKey agreed it could not forestall payment to BAE Systems even if it asserted counterclaims like the ones in this action.

SpaceKey has breached its obligations under the parties' agreement and it has failed to pay the agreed price for the goods it accepted. BAE Systems is therefore entitled to summary judgment in its favor on its claims at Counts III and IV.

### B. SpaceKey's Rights Are Governed By The Terms Of Sale

SpaceKey's objection relies on the assumption that BAE Systems' obligations and SpaceKey's remedies extend beyond those expressly articulated in the parties' final written agreement. Both assumptions are wrong.

The obligations BAE Systems owed SpaceKey are contained in the parties' final written agreement, which comprises the terms of sale and the goods identified in SpaceKey's purchase order, to the extent the latter is consistent with the terms of sale. All purported agreements and statements that preceded this final written agreement, as well as any different or additional terms found in SpaceKey's purchase order that add to or differ from the terms of sale, are expressly excluded and therefore do not give rise to any binding obligation. (Document 36-3, Rea Decl.

Ex. A ¶¶ 1, 18) (defining documents that constitute the agreement and integration clause.) S*ee also* RSA 382-A:2-202 (establishing parol and extrinsic evidence rules applicable to final written agreements). For this reason, statements appearing in early marketing materials for the FPGAs – which form the cornerstone of SpaceKey allegations of nonconformance – are not part of the parties' contract and they do not bear on whether BAE Systems met its contractual obligations to SpaceKey. *See Globe Metallurgical, Inc. v. Hewlett-Packard Co.*, 953 F. Supp. 876 (S.D. Ohio 1996), *judgment aff'd*, 99 F.3d 1139 (6th Cir. 1996) (when a contract is completely integrated, extrinsic evidence may not be admitted to contradict or to explain or supplement its terms); *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024 (7th Cir. 1993) (written contract that contained an integration clause excluded an alleged oral warranty that was made before the sale but was not included in the written contract). SpaceKey's late breaking contention of nonconformance is particularly incredible given that its own revised purchase order SKC12508(C) identified the FPGAs with specifications consistent with what BAE Systems delivered and not what SpaceKey claims BAE Systems promised in its early marketing materials.[1] (Document 36-5, Rea Decl. Ex. C) (requesting purchase of "1280B RAD Hard FPGA TID ≥ 50 KRAD".)

In any event, SpaceKey does not dispute that it received all of the FPGA's it ordered from BAE Systems, nor does it dispute that it has already resold all of the FPGAs for full price (and profit to SpaceKey) pursuant to the contracts it secured with its customers from 2008 and 2009. SpaceKey's only contention is that the FPGAs – none of which are in its possession any longer – did not meet certain specifications. SpaceKey admits that it knew of some of these

---

[1] William Key contends that the revised purchase orders he submitted to BAE Systems served only to document all the ways that BAE Systems failed to deliver conforming parts. This is not credible and cannot raise an issue of fact. Purchase orders are operative documents that identify a buyer's offer to purchase goods at a particular price. *See* RSA 382-A:2-207 cmt 1 (explaining resolution of conflicting terms in buyer's purchase order and seller's acknowledgement). By submitting revised purchase order SKC12508(C), SpaceKey expressly changed its order to accept delivery of FPGAs with radiation tolerance less than 300 KRAD.

alleged nonconformities, such as the radiation tolerance, before it took delivery of the FPGAs. (Document 44-5, Key Decl. ¶ 5.) As a matter of law SpaceKey cannot revoke acceptance on the basis of nonconformities of which it was aware. RSA 382-A:2-607 (buyer's acceptance cannot be revoked if nonconformities known before delivery). As for the other alleged nonconformities, such as single event specifications, SpaceKey agreed in the contract documents that its exclusive remedy comprised return of the FPGAs for repair, replacement or a refund of the purchase price (to the extent already paid). By agreeing to this exclusive remedy, SpaceKey relinquished any right to deduct its damages from the price under RSA 382-A:2-717 or to accept the goods and seek damages after the fact under RSA 382-A:2-714.

Having rejected its exclusive remedy to return the FPGAs and having instead resold all of them to its customers as it had intended all along, SpaceKey has accepted the FPGAs as a matter of law and it is now obligated to pay for them.

### C. SpaceKey Has Failed To Adduce Evidence of Damages

But even if SpaceKey had not relinquished the damage remedy provided by RSA 382-A:2-717, SpaceKey concedes it would still only be permitted to deduct its damages from the purchase price. Yet SpaceKey has failed to mount a credible legal argument or to adduce a scintilla of evidence that it has sustained any damages. It is undisputed that SpaceKey resold all of the FPGAs to its customers for the full price of the contracts it entered into with them *before* the FPGAs were ordered and *before* any of the alleged nonconformities were known. SpaceKey thus realized the full profit from the resale of the FPGAs that it had bargained for from the start. It suffered no discount on the resale for the alleged deficiencies in radiation tolerance. It suffered no discount for alleged departures in single event specifications. It suffered no discount for the alleged absence of TCI reports or QML certification. In short, none of the alleged

4

nonconformities SpaceKey has raised to thwart summary judgment resulted in a single dollar of damages to SpaceKey.[2]

It also bears emphasis that SpaceKey's last delivery of FPGAs to its customer occurred only months ago – in March 2011. SpaceKey admits, though, that it was aware no later than March 2010 not only of the lower radiation tolerance (a condition it accepted before the FPGAs were shipped), but also the single event specifications and the purported absence of TCI reports and QML certification. (Document 37, Def.'s Obj. at CS ¶¶ 20-23.) Given SpaceKey's stated dismay over the condition of the parts BAE Systems delivered, dismay that forms the basis of counterclaims against BAE Systems, the only inference to be drawn is that SpaceKey told its customers of the situation and they nonetheless accepted and paid for the parts. Any other inference places SpaceKey in the positon of having misrepresented at least by omission to its own customers. This only further undermines SpaceKey's contention that it did not accept the parts, or that it has been damaged due to nonconforming parts.

Without evidence that it incurred any actual damages for the alleged nonconformities, SpaceKey is obligated – even under its own analysis of RSA 382-A:2-717 – to pay the full amount due and owing for the FPGAs.

---

[2] BAE Systems maintains in this motion that it delivered to SpaceKey what it promised. SpaceKey has leveled a series of accusations in response, including accusations that BAE Systems failed to furnish TCI reports and failed to obtain QML certification for the FPGAs. As with SpaceKey's other allegations of nonconformance (e.g., radiation tolerance, single event specifications), BAE Systems will show at trial that it delivered the testing reports SpaceKey ordered. BAE Systems will also show that SpaceKey knew BAE Systems was initiating the QML certification process at the time of delivery and that SpaceKey never required QML certification as a condition for accepting the FPGAs. Further, BAE Systems will show that the QML certification process continues to this day and that BAE Systems expects to obtain certification for the FPGAs. Finally, BAE Systems will show that SpaceKey's claims of nonconformance conveniently arose only after BAE Systems terminated any future consultant relationship with it and demanded payment for the FPGAs. All of these disputes of fact are immaterial, however, given (i) that SpaceKey fails to present any evidence of damages and, thus, it cannot rightfully refuse to make payment for the FPGAs, and (ii) that SpaceKey agreed to pay regardless of whatever rights it may assert. For summary judgment purposes, therefore, the larger and undisputed point is that SpaceKey has suffered no cognizable damages from whatever nonconformance SpaceKey alleges.

### D. SpaceKey Agreed To Pay For The FPGAs Irrespective Of Any Rights it May Pursue

SpaceKey agreed at paragraph 6 of the terms of sale that it would submit payment to BAE Systems for the FPGAs at the earlier of 30 days from the date of invoice or delivery and that such payment would be made "unconditional" and "without recourse, setoff or discount." (Document 36-3, Rea Decl. Ex. A ¶ 6.)  To the extent SpaceKey received FPGAs that did not conform to specification, it agreed at paragraph 8 of the terms of sale to return the parts for repair, replacement or refund of the purchase price. (*Id*. ¶ 8(b) & 8(e).)  Taken together, therefore, paragraphs 6 and 8 set forth the universe of options that were available to SpaceKey with respect to the FPGAs:  it had a right to return them and, failing that, it was required to pay for them.  SpaceKey waived any right to pursue a recoupment under RSA 382-A:2-717 – or to pursue any other rights – as a means to forestall the payment due to BAE Systems.

In its continuing efforts to backpedal from the terms of sale it accepted, SpaceKey now argues that paragraph 6 does not foreclose a right of recoupment under RSA 382-A:2-717 because its language only concerns the mechanics of payment by negotiable instrument. (Document 44, Def.'s Obj. at 16.)  In particular, SpaceKey argues that the term "without recourse" speaks exclusively to an intent on the part of BAE Systems to limit its liability as an indorser of negotiable instruments. (*Id*. at 15.)  To be sure, "without recourse" is a term of art in the context of negotiable instruments – it may be used by an endorser to limit liability to a subsequent holder on a negotiable instrument that is later dishonored.  RSA 382-A:3-415.  For example, the failure of a defendant to indorse a check as "without recourse" caused him to remain liable to a subsequent holder when the check was later dishonored.  *See Merrimack Farmers Exchange, Inc. v. Elliott*, 111 NH 121 (1971).  But in SpaceKey's view, the term could have no meaning outside the negotiable instruments context.  The term as understood in the

context of negotiable instruments, however, has no application in the context of paragraph 6, and SpaceKey's view would leave that term without any meaning at all.

Not only does paragraph 6 lack any language suggesting that it is limited to negotiable instruments, but SpaceKey's construction would render it pointless. The non-recourse provisions in UCC Article 3 concern not the maker of the instrument, but rather someone who subsequently holds the instrument and indorses it over to another. By indorsing without recourse, a party can protect itself from claims brought by a third party if the instrument is dishonored. *See Merrimack Farmers,* 111 NH 121.

Paragraph 6 concerns payment by SpaceKey to BAE Systems. SpaceKey would be a maker of any negotiable instrument it delivered to BAE Systems (e.g., a check), though the record is absent of it ever doing so. By contrast, BAE Systems' indorsement of an instrument is a matter between BAE Systems and the third parties that subsequently hold the instrument. Since those third parties are not subject to the terms of sale between SpaceKey and BAE Systems, they would not be subject to the dictates of paragraph 6. If the "without recourse" language means what SpaceKey asserts, therefore, it would have no point in this agreement. To read paragraph 6 as SpaceKey advocates would be to strain the language beyond reason or, worse, to read it out of the contract entirely. *See, e.g., Foundation for Seacoast Health v. HCA Health Services of New Hampshire, Inc.*, 157 N.H. 487, 492 (2008) (words and phrases used by the parties to a contract will be assigned their common meaning); *Lassonde v. Stanton*, 157 N.H. 582, 594 (2008) (court will read contract as a whole).

Lacking any language limiting application to negotiable instruments or a plausible construction to that same end, paragraph 6 can only be reasonably construed if, in keeping with standard principles of contract construction, the language is given its ordinary meaning. In its

broad meaning, the "without recourse" language operates to prohibit SpaceKey from attempting to enforce rights as a means to forestall payment; SpaceKey must pay in full without condition. This meaning is consistent with the dictionary definition of the term. Garner, *Black's Law Dictionary* 1389 (9th ed.) ("recourse" means enforcement of a right). It is also the meaning employed in New Hampshire decisional law outside the context of negotiable instruments. *New Hampshire Ins. Co. v. Duvall*, 114 N.H. 719, 722 (1974) (noting plaintiffs could find themselves "without recourse" to recover compensation paid under worker compensation laws later determined not to be due).

SpaceKey's proffered construction finds no support in the plain, unambiguous language of paragraph 6 and would in effect deprive that paragraph of any meaning. SpaceKey agreed under paragraph 6 that it would make payment for the FPGAs irrespective of and "without recourse" to any of its own rights it may seek to enforce.[3] SpaceKey's failure to honor the requirements of paragraph 6 is a breach of contract that compels summary judgment for BAE Systems.

### E. SpaceKey Concedes It Owes BAE Systems For Purchase Orders SKC1610 and SKC122309

SpaceKey does not contest that it accepted goods under purchase orders SKC1610 and SKC122309 and that it has failed to pay for them. SpaceKey also presents no argument or justification for the failure to pay for the goods delivered by BAE Systems under these purchase

---

[3] SpaceKey continues to manufacture non-existent loopholes in the terms of sale and now characterizes the right it is pursuing as one of recoupment under RSA 382-A:2-717. This new theory of its claim presents several problems. First, recoupment under the UCC is a defensive remedy and fundamentally different than a counterclaim. SpaceKey has never pleaded recoupment as an affirmative defense. Second, a buyer may only elect recoupment or a counterclaim, not both. 4A Anderson U.C.C. § 2-717:12 (3d. ed.); *International Computer Group, Inc. v. Data General Corp.*, 283 S.E.2d 12, 16 (Ga. App. 1981) (a buyer cannot assert a claim for damages against the seller by way of a counterclaim and at the same time raise the claim in recoupment to reduce the recovery of the purchase price by the seller, as this would allow the buyer to recover duplicating damages). Thus, even were remedies available to SpaceKey outside the terms of sale and even had SpaceKey preserved the affirmative defense, SpaceKey's election of recoupment would nevertheless compel summary judgment for BAE Systems on its counterclaims. *See International Computer*, 283 S.E.2d at 16 (dismissing buyer's counterclaims where buyer also asserted defense of recoupment).

orders. Accordingly, BAE Systems is entitled to summary judgment on Counts III and IV with respect to the payments due and owing under purchase orders SKC1610 and SKC122309, which total $51,757.00, exclusive of interest and costs of collection (including attorneys' fees).

### F. Conclusion

For the foregoing reasons, and for all the reasons stated in its opening memorandum of law, BAE Systems respectfully requests that it be granted summary judgment on its claims at Counts III and IV.

Respectfully submitted,

**BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION INC.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH, P.A.**

Dated: September 9, 2011   /s/ Jonathan M. Shirley
Daniel E. Will, Esq. (Bar No. 12176)
Jonathan M. Shirley, Esq. (Bar No. 16494)
Joshua M. Wyatt, Esq. (Bar No. 18603)
111 Amherst Street
Manchester, NH 03101
(603) 669-1000
dwill@devinemillimet.com
jshirley@devinemillimet.com
jwyatt@devinemillimet.com

### CERTIFICATE OF SERVICE

I, Jonathan M. Shirley, hereby certify that a copy of the foregoing Reply in support of Plaintiff's Motion for Summary Judgment on Counts III and IV was this day served via the Court's Electronic Filing System on counsel for the defendant.

/s/ Jonathan M. Shirley
Jonathan M. Shirley