| | |
|---|---|
| BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION INC.<br><br>     Plaintiff,<br><br>v.<br><br>SPACEKEY COMPONENTS, INC.<br><br>     Defendant. | Civil Action No. 10-CV-370-LM |

## REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S THIRD MOTION FOR SUMMARY JUDGMENT

  Plaintiff BAE Systems Information and Electronics Systems Integration Inc. ("BAE Systems"), by and through its attorneys, Devine, Millimet & Branch, Professional Association, and pursuant to Local Civil Rule 7.1(e)(1), respectfully submits this Reply to Defendant's Objection to Plaintiff's Third Motion for Summary Judgment (Document 59).

  **A. Preliminary Statement**

  BAE Systems' third motion for summary judgment presents questions of interpretation of contract provisions that the parties agree are unambiguous. Resolution of these questions of law will likely simplify trial (if not obviate it entirely) for all issues except those surrounding SpaceKey's purchase of the RH1280B FPGAs.

  By its motion, BAE Systems seeks summary judgment on its claims for declaratory judgment that it terminated the Agreement no later than February 8, 2010, and that it owed no obligation (nor incurred liability) to SpaceKey for the purchase orders it terminated and refused to accept following the termination of the Agreement. By its objection, SpaceKey offers theories of contract interpretation that defy common sense and articulates causes of action never pleaded or that ignore the realities of the terms of sale governing the parties' transactions. As set forth

below, SpaceKey fails to demonstrate the existence of a material dispute of fact or a cohesive legal theory that forestalls summary judgment entering for BAE Systems on Counts I and II of its complaint and Counts 1 and 2 of SpaceKey's counterclaim complaint.

### B. The Agreement Terminated Automatically Upon SpaceKey's Violation Of Virginia Law

BAE Systems seeks a declaratory judgment that the Agreement terminated no later than February 1, 2007, because SpaceKey violated Virginia law when it continued to transact business after it was terminated as a corporation on June 30, 2006. This result is compelled by paragraph 12(B) of the Agreement, which calls for the automatic termination of the Agreement upon any "unlawful conduct" undertaken by SpaceKey.

SpaceKey does not dispute that its conduct in this regard was unlawful. Instead, SpaceKey asserts that it did not engage in the type of unlawful conduct proscribed by paragraph 12(B) nor did its unlawful conduct occur in connection with rendering of services under the Agreement. SpaceKey also insists that its reinstatement as a Virginia corporation years later erased the consequences of its unlawful conduct. None of SpaceKey's arguments has merit.

Paragraph 12(B) states expressly that "unlawful conduct" shall result in the immediate termination of the Agreement. (Rea Decl. at Ex. B., Doc. No. 57-4) This provision is phrased in the broadest terms and it makes no distinction whatsoever as to the kinds of unlawful conduct that is proscribed. The mere fact that other provisions in the Agreement discuss export laws is immaterial to the construction of paragraph 12(B). Those provisions make no reference to paragraph 12(B) and SpaceKey cites no rule of contract construction to support its novel proposition that these unrelated provisions serve to limit the broad language of paragraph 12(B). Had the parties intended the phrase "unlawful conduct" to mean a violation of export laws alone,

they would have written it into paragraph 12(B).  Accordingly, the unlawful conduct admitted by SpaceKey was of the kind contemplated by paragraph 12(B).

SpaceKey's contention that its unlawful conduct did not occur while rendering services under the Agreement is even less convincing.  SpaceKey does not dispute that it performed services under the Agreement between 2006 and 2010 and, indeed, it claims to be owed commissions under the Agreement for services rendered during a significant portion of this period.  Spacekey performed those services, i.e., the arrangement of sales of BAE Systems goods to "financially qualified buyers" (which was SpaceKey), as a terminated Virginia corporation.  Thus, it was unlawful for SpaceKey to continue transacting business with BAE Systems and earning commissions for goods it resold to its own customers, i.e., to provide services under the Agreement.  The unlawful conduct is the very provision of services SpaceKey rendered in connection with the Agreement.

SpaceKey's reinstatement as a Virginia corporation in May 2011 also has no impact on the irrevocable termination of the Agreement.  As explained in BAE Systems' opening memorandum, corporate reinstatement cannot unwind a divestment of rights that has occurred during a corporation's period of termination.  Pfls' Memo at 12-15 (Doc. No. 57-1).  This is true even when the reinstatement is deemed retroactive under state corporation law.  *Id.* (discussing *Alperstein By and Through Alperstein v. Sherwood Intern., Inc.*, 778 P.2d 279, 280-81 (Colo. App. 1989) and *Psychic Research and Dev. Inst. of Md. V. Gutbrodt*, 415 A.2d 611 (Md. App. 1980)).  SpaceKey was divested of its rights under the Agreement, including the right to claim commissions, when the Agreement terminated automatically no later than February 1, 2007.  Those rights – which were fixed by contract – cannot be unwound simply because SpaceKey decided years later to cure its unlawful conduct by reinstatement as a Virginia corporation.

3

For its part, SpaceKey argues vigorously that the decisional law cited by BAE Systems – *Alperstein* and *Psychic Research* – cannot apply because those cases involved claims against probated estates. Def's Obj. at 11-14 (Doc. No. 59). But SpaceKey does nothing to address the general rule these cases establish and which applies beyond those cases' factual underpinnings: that a divestment of rights during a corporation's non-existence cannot be unwound even when reinstatement is retroactive under the applicable state corporation statute. Again, this rule is important because SpaceKey was divested of its rights under the Agreement no later than 2007 when the Agreement terminated automatically. That SpaceKey may have cured its unlawful conduct years later changes nothing. It does not change the fact that SpaceKey violated the law after June 30, 2006 and it does not change the fact that the Agreement terminated automatically as a result. Once the Agreement terminated, the bundle of rights SpaceKey held under it vanished permanently. It is in this way that a contract termination is the same as the non-claim statute in *Alperstein*: once the contract rights are extinguished, they cannot be revived.

It is also worth noting that the Virginia corporation reinstatement statute does not extend as far as SpaceKey contends. The statute speaks to the retroactive curing of "liabilities" that may have been incurred during the period of the corporation's non-existence. VA Code § 13.1-754. This statutory language does not purport to revive contract rights that were extinguished years ago during the period of a corporation's non-existence, as happened in this action.

## C. The Agreement Terminated No Later Than February 8, 2010 Upon BAE Systems' Exercise Of Its Rights Under Paragraph 12

BAE Systems is also entitled to a declaratory judgment that the Agreement terminated no later February 8, 2010, after BAE Systems properly exercised its right under paragraph 12 to terminate the Agreement upon 60 days' notice to SpaceKey.

4

As expected, SpaceKey argues against this outcome by claiming that all of the termination rights under paragraph 12 expired upon the first Agreement renewal on February 1, 2007 and, thereafter, the parties could only terminate the Agreement upon 90 days' notice prior to the next renewal period.  Defs' Obj. at 15-19.  To mount this argument, SpaceKey offers a convoluted interpretation of paragraph 2 premised upon the Agreement having two separate "life phases," though that term is nowhere to be found in the Agreement itself.  In any event, the crux of SpaceKey's argument is that paragraph 12 must have expired at the first renewal on February 1, 2007 because a contrary interpretation, at least in its opinion, renders the 90 day non-renewal notice required by paragraph 2 meaningless.  *Id*. at 18.

Again, as BAE Systems explained in its opening memorandum, SpaceKey's interpretation ignores the fundamentally distinct purposes paragraphs 2 and 12 serve.  Paragraph 2 establishes the term of the Agreement and the mechanics by which it will renew or expire.  Paragraph 12, by contrast, sets forth the mechanics for termination of the Agreement at any time prior to expiration of the annual term.  These provisions are hardly unique and, indeed, they commonly coexist in all manner of contracts, from employment agreements to supply contracts. *See, e.g*., *Greenhalgh v. Presstek, Inc.*, 152 N.H. 695 (2005) (involving annual employment agreement that provided automatic renewal of term unless notice of non-renewal timely given <u>and</u> right to terminate agreement at any time for cause); *Mobile Oil Corp. v. Goodhue Boatyard, Inc.*, 110 N.H. 80, 82-83 (1969) (involving annual supply contract that renewed automatically unless notice of non-renewal given 90 days in advance <u>and</u> right to terminate at any time upon specified events).  SpaceKey's argument therefore rests on the unremarkable fact that the Agreement is structured such that it may be exited in alternative ways – be it automatically for unlawful conduct, without cause with 60 days' notice, or by non-renewal with 90 days' notice.

That a party may elect to exit the Agreement using paragraph 12 instead of paragraph 2 does not render the latter meaningless.  Paragraph 2 stands as an independent right that, like many of the other rights in the Agreement, may go unused by the parties for the life of the Agreement.  That fate is far different – and a far less tortured interpretation – than reading an entire provision out of the Agreement, as SpaceKey proposes to do with paragraph 12 under its interpretation. *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1995) (interpretation which gives effect to all the terms of a contract is preferable).

Moreover, SpaceKey's proffered interpretation simply goes too far.  To read paragraph 2 as extinguishing paragraph 12 in the second "life phase" of the Agreement not only eliminates the right of termination without cause, but also eliminates the right of automatic termination for unlawful conduct.  Without this latter remedy, BAE Systems would be bound to the Agreement even if SpaceKey were to intentionally violate laws and use its fees for illegal purposes – conduct that would potentially expose BAE Systems to liability as well.  This outcome only further underscores the illogical interpretation proposed by SpaceKey, plainly in conflict with the intentions of the parties to protect BAE Systems from such liability.

Accordingly, the Agreement terminated no later than February 8, 2010 because BAE Systems properly exercised its right to terminate the Agreement without cause under paragraph 12.

### D. The Revised Terms Of Sale Do Salvage SpaceKey's Counterclaim Arising From The Terminated Purchase Orders

BAE Systems has moved for a declaratory judgment that it owes no obligation to SpaceKey for the purchase orders it terminated following the termination of the Agreement. BAE Systems terminated purchase orders SKC61808, SKC122710, and SKC1130 after it became apparent that SpaceKey was not going to pay BAE Systems for the goods purchased

6

under purchase orders SKC12508, SKC122309, and SKC1610 – the latter two of which the Court has already determined SpaceKey failed to pay without justification.

SpaceKey contends that BAE Systems was not entitled to terminate the purchase orders because they were governed by a revised set of terms of sale that eliminated BAE Systems' rights under paragraph 6 to demand prepayment or suspend delivery of the goods. Even assuming this is true, SpaceKey still cannot prevail on its claim.[1] Paragraph 13 of the revised terms of sale, which is identical to the original version, limits the amount of consequential damages SpaceKey may recover from BAE Systems for non-performance or breach to the amount BAE Systems collected on the purchase orders. In other words, SpaceKey may only recover consequential damages to the extent it prepaid BAE Systems for the goods identified in the terminated purchase orders. Since there is no evidence SpaceKey prepaid BAE Systems for any of the goods, there are no damages available to be awarded to SpaceKey.

Notably, the parties do not dispute the legal enforceability of Paragraph 13. SpaceKey does not rebut BAE Systems' arguments concerning that paragraph, nor does SpaceKey offer any argument that Paragraph 13 means what it says and is fully enforceable. SpaceKey has no explanation for how it can claim consequential damages outside of the scope of Paragraph 13. SpaceKey cannot.

Accordingly, BAE Systems is still entitled to a declaratory judgment that it owes no obligation (and incurred no liability) to SpaceKey for terminating purchase orders SKC61808, SKC122710, and SKC1130.

---

[1] Although there presently exists a dispute of fact as to which SpaceKey purchase orders are governed by the revised terms of sale, it is a dispute that is not material to the issues raised in BAE Systems' present motion. As discussed above, paragraph 13 of the terms of sale, which is the same in both the original and revised versions, effectively eliminates any right of SpaceKey to claim damages for BAE Systems failure to perform under the purchase orders.

**E. SpaceKey Cannot Pursue Its Claim Arising From The Unaccepted Purchase Orders**

SpaceKey acknowledges that BAE Systems owed no duty to accept additional purchase orders from SpaceKey in the Spring of 2010 if, in fact, the Agreement was terminated at the time SpaceKey tendered them. Defs' Obj. at 19. The parties therefore agree that SpaceKey's counterclaim surrounding the unaccepted purchase orders (Count 1) should be dismissed if the Court finds in favor of BAE Systems as to the termination of the Agreement. Should the Agreement not have terminated in 2010, however, SpaceKey argues that BAE Systems owed it a duty to accept the purchase orders it tendered in the Spring of 2010 and that, by failing to do so, SpaceKey is entitled to damages in the form of the lost profits it would have realized upon resale of the goods to its own customers. SpaceKey is not entitled to pursue this claim for two reasons.

First, SpaceKey has not properly pleaded the cause of action it now pursues. SpaceKey reveals for the first time in its objection that it rests its argument upon a claim for a violation of the duty of good faith implied in New Hampshire contracts and *not* a breach of an express term of the Agreement. Def's Obj. at 19-20. SpaceKey's counterclaim complaint, however, contains none of the allegations necessary to state such a claim. *Adhesive Technologies, Inc. v. Isaberg Rapid AB*, 2011 WL 2134381 (D.N.H. May 26, 2011). In *Adhesive Technologies*, the Court held that a claim for the breach of the implied duty of good faith under New Hampshire law is not sufficiently pleaded unless it is supported by specific facts establishing that the allegedly breaching party was vested with discretion under the contract and that the discretion was abused. 2011 WL 2134381 at *17. The Court determined that the plaintiff properly pleaded the element of discretion because it alleged final design matters over which the defendant had such discretion. *Id*. The Court also found the plaintiff sufficiently pleaded an abuse of that discretion by alleging that the defendant's "failure to cooperate in good faith" adversely affected the plaintiff's ability to benefit under the Agreement. *Id*.

None of the allegations that satisfied the Court in *Adhesive Technologies* are found in SpaceKey's counterclaim complaint. SpaceKey does not allege that the Agreement vests BAE Systems with discretion, nor does SpaceKey describe when or how BAE Systems abused that discretion to deny SpaceKey the substantial value of the Agreement. The phrase "good faith" is nowhere to be found among the 58 paragraphs of SpaceKey's counterclaim complaint, nor did SpaceKey plead its claim in a count separate from a standard breach of contract claim, which is the practice. *See Adhesive Technologies*, 2011 WL 2134381 at *17 (noting plaintiff pleaded breach of good faith in count separate from standard breach of contract claim). SpaceKey has not properly pleaded a claim for violation of the implied duty of good faith and it cannot be permitted to pursue such a cause of action now.

Second, in this new claim, SpaceKey seeks damages that are simply unavailable to it. SpaceKey seeks the profits it would have realized had it been able to resell the goods it wanted to purchase from BAE Systems. But the terms of sale that SpaceKey would have been required to accept as a condition of BAE Systems filling the purchase orders – and which governed all sales to SpaceKey – limits consequential damages like lost profits to the amount SpaceKey prepaid for the goods. *See* Terms of Sale ¶ 13 (Doc. No. 59-4). Because SpaceKey never prepaid for any of the purchase orders BAE Systems refused to accept, SpaceKey is not entitled to an award of damages.

SpaceKey attempts to side step this limitation by insisting that its claim is based solely on a breach of the Agreement and is therefore unencumbered by the limitations of the terms of sale. The Agreement itself, however, acknowledges that all sales that flow from the Agreement will be made subject to BAE Systems terms of sale. (Rea Decl. at Ex. B ¶ 3.) SpaceKey cannot be

awarded lost profit damages for sales that, had they been consummated, would have first required SpaceKey to accept limits on such damages.

BAE Systems is entitled to Summary Judgment on SpaceKey's counterclaim arising from the unaccepted purchase orders (Count 1) because it is now evident that SpaceKey failed to properly plead the theory of liability it is pursuing and because SpaceKey agreed to forego the damages it now claims.

### F.  Conclusion

For reasons set forth above, and for all the reasons stated in BAE Systems opening memorandum of law, BAE Systems should be granted summary judgment in its favor on Counts I and II of its complaint and Counts 1 and 2 of SpaceKey's counterclaim complaint.

Respectfully submitted,

**BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION INC.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH, P.A.**

Dated: November 8, 2011    /s/ Jonathan M. Shirley
Daniel E. Will, Esq. (Bar No. 12176)
Jonathan M. Shirley, Esq. (Bar No. 16494)
111 Amherst Street
Manchester, NH 03101
(603) 669-1000
dwill@devinemillimet.com
jshirley@devinemillimet.com

### CERTIFICATE OF SERVICE

I, Jonathan M. Shirley, hereby certify that a copy of the foregoing Reply to Defendant's Objection to Plaintiff's Third Motion for Summary Judgment was this day served via the Court's Electronic Filing System on counsel for the defendant.

/s/ Jonathan M. Shirley
Jonathan M. Shirley